40 N.J. Super. 588 (1956)
123 A.2d 799
GEORGE PANKO AND MAE PANKO, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
PAULINE GRIMES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1956.
Decided July 6, 1956.
*591 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Herbert Horn argued the cause for defendant-appellant (Messrs. Lloyd and Horn, attorneys).
Mr. Robert N. Wilentz argued the cause for plaintiffs-respondents (Messrs. Wilentz, Goldman, Spitzer and Sills, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Mrs. Mae Panko had a verdict of $8,000 for personal injuries sustained while a passenger in a car driven by her husband, George Panko, which collided with an automobile operated by defendant. This was reduced by consent to $6,000. George Panko recovered $3,126 for personal injuries, property damage and loss of consortium. From judgments for these sums entered in the Law Division defendant appeals. The principal point of controversy arises from the charge of the trial court that Mrs. Panko "did, in fact, by uncontradicted testimony, suffer pain and at least some degree of permanent injury." Defendant's position is that the court erred in removing the issue of the permanency of Mrs. Panko's injuries from the province of the jury.
The accident occurred May 31, 1954. Mrs. Panko was rendered unconscious by the crash and was taken to the Paul Kimball Hospital, where, according to the hospital records, she remained until June 4, 1954, when she was discharged. Her testimony at the trial was that she was confined to the hospital eight days. Mrs. Panko testified that when she returned home she was unable to do her household duties because she was too sick. She felt pains and a pulling in the back and left parts of her neck. The pains and accompanying headaches continued until the trial in October 1955. These conditions confined her to bed "two *592 or three times a week," for a day or two on each occasion. She says the pains go "to the back of her ear and up her head" with the sensation of a hammer hitting her head. She said, also: "My body was severely bruised, so I still have aches and pains in my body. * * * Naturally, it wasn't only on the outside. It was on the inside, too."
Dr. Carmine L. Pecora, a general practitioner, testified for plaintiffs. He attended Mrs. Panko at the hospital and on a number of subsequent occasions treated her at his office, the first time, June 25, 1954, and the last three dates, March 31, May 27 and October 5, 1955. X-rays and a survey of the cervical spine and ribcage were negative, and there was no indication of dislocation. The patient's pain "persisted for quite some time," and in October 1954 he began to treat her with a Camp collar for the support of the neck. Apparently on the basis of consultation with an orthopedic specialist in Philadelphia, to whom he had referred the patient "for an opinion," Dr. Pecora described the injury as of the "whiplash" type, including a "tearing of the posterior longitudinal ligaments, involving the third, fourth, and fifth cervical vertebra [sic] with an anterior slipping of the vertebra and a tearing of the muscles on the left side of the neck." She was given drugs intermittently for relief of pain. The doctor testified, on direct examination:
"Q. What is your prognosis, Doctor? What does the future hold for this woman for the injuries she sustained?
A. Well, when I last saw Mrs. Panko she was still complaining of pain in the left cervical region. I can't say how long it's going to stay there or when it's going to go away. I don't know."
On cross-examination of Dr. Pecora, it was shown that the hospital record pertaining to Mrs. Panko showed an entry of "no special complaints" for June 1, 1954 and entries of "no complaints" for each of the subsequent days of her stay at the hospital.
Dr. Jesse Schulman made a physical examination of Mrs. Panko on behalf of the defendant on October 27, 1954 and also on May 13, 1955. He testified that upon his first examination *593 he "found that Mrs. Panko had suffered a mild sprain of the neck, in essence * * * a stretching of the ligaments which support the vertebrae, the spine, in that neck region." Her condition on the second examination and her complaints were "about the same. She still had restriction of motion of the neck and there had been very little change." He testified that he could find some restriction without regard to the subjective symptoms but that "the restriction which Mrs. Panko reported, of course, was much more extensive." His final diagnosis was "a cervical sprain of a mild degree." He testified:
"* * * I might add that I believe that Mrs. Panko's disability is more apparent than real. When one talks to her and examines her and enables her to relax, one is able to move her head rather freely, also the neck; much more so than she will of her own accord."
Also,
"* * * I found in Mrs. Panko's case, as I stated, that during the course of examining this lady, whereas she held herself very still and complained of pain on slight movements, during the course of the examination I was able to obtain relaxation and rather free movement; so that I feel that that restriction is not nearly as great as Mrs. Panko thought it to be."
Concerning permanency, he testified on direct examination:
"Q. Doctor, what is your opinion with respect to the permanency of this condition?
A. I think Mrs. Panko has a small amount of permanency as a result of her injury.
Q. What do you think with respect to its permanency?
A. I think that there is some disability which will undoubtedly be permanent in her case.
Q. Can you describe the extent of that?
A. The extent of it, in my opinion, is that she will probably from time to time have some pain in the neck, and I believe that she will also from time to time have some slight restriction of motion of the neck."
On cross-examination he repeated that "Mrs. Panko will probably have pain from time to time on a permanent basis."
*594 Defendant contends that the trial court erred in instructing the jury, as a matter of law, that Mrs. Panko had "some degree of permanent injury." She contends (a) that Dr. Schulman's prognosis is not properly to be considered as "uncontradicted" by that of Dr. Pecora and (b) that since Dr. Schulman's diagnosis was to some extent predicated upon subjective symptoms related by Mrs. Panko and there was evidence in the case from which the jury could find her credibility impaired, it might accord correspondingly less weight to Dr. Schulman's conclusion and find that the condition was not permanent. We have concluded that defendant's argument is essentially sound and that the charge of the trial court was prejudicially erroneous.
We may begin with the cardinal rule that "where fairminded men may honestly differ as to the conclusion to be drawn from disputed facts, or as to the disputed inferences to be drawn from undisputed facts, a case must be submitted to a jury, * * *" Brody v. Albert Lifson & Sons, 17 N.J. 383, 391 (1955). But even when evidence is uncontradicted, its weight is determinable by the triers of the facts and not by the court as a matter of law, although uncontradicted evidence cannot be arbitrarily dismissed as valueless. Ravitz v. Chirelstein, 135 N.J.L. 5, 7 (Sup. Ct. 1946).
"* * * The question in the ultimate analysis is whether the circumstances are such as that reasonable minds may reasonably entertain divergent views as to the truth of the tendered hypothesis, whether the evidence be uncontradicted or not. * * * Evidence is not necessarily conclusive because uncontradicted. Where the particular circumstances reasonably give rise to conflicting inferences as to testimonial trustworthiness, the evidence is not conclusive merely because it is uncontradicted by direct testimony. Clark v. Public Service Electric Co., 86 [N.J.L.] 144; Schmidt v. Marconi Wireless Telegraph Co., 86 Id. 183; Trenton Banking Co. v. Howard, [N.J. Ch.] 187 Atl. Rep. 569, affirmed 121 N.J. Eq. 85." Ibid. (at page 7); Koch v. La Porta, 30 N.J. Super. 388 (App. Div. 1954).
We think the rule of the Ravitz case is applicable here. First, it seems to us that the testimony of Dr. Pecora is such that Dr. Schulman's conclusion cannot be regarded as uncontradicted. *595 Second, the particular circumstances reflected by the present record do give rise to "conflicting inferences as to the testimonial trustworthiness" of Dr. Schulman's conclusion, assuming that to be unequivocal, notwithstanding his qualification of his opinion at two points by the use of the adverb "probably."
Plaintiff implies that the evidential posture of the matter as to permanency in the trial court was as though Dr. Pecora had not testified at all and that Dr. Schulman's opinion was the only proof on the subject. We cannot agree. Dr. Pecora was the attending physician, had seen and treated the plaintiff frequently from the time of the accident until the time of the trial (cf. Fusco v. Cambridge Piece Dyeing Corp., 135 N.J.L. 160 (E. & A. 1946)), and had the benefit of consultation with an orthopedic specialist. His conclusion that he did not know how long her condition would continue (i.e., when the pain was "going to go away") cannot be regarded as purely negative testimony, bereft of probative weight on the issue of permanency. The honest inability of the treating physician to come to a conclusion concerning permanency, particularly when testifying on behalf of his patient, was, in our judgment, evidence which, taken together with all of the other circumstances of the case, could reasonably have permitted the jury to find against the plaintiff on the issue of permanency. A thoroughly considered abstention from the expression of a positive prognosis may well carry greater weight than an affirmative dogmatism.
Dr. Schulman did not specifically state whether his conclusion as to permanency was to any degree based upon the subjective symptoms related to him by Mrs. Panko, but we believe the record warrants an inference that it was, to some degree. In such a situation a medical conclusion is vulnerable to the extent that the factual basis for the conclusion may be discredited. As stated in Ravitz v. Chirelstein, supra, the trustworthiness of expert opinion "necessarily depends upon the competency and integrity of the one who thus bears witness and the facts and circumstances upon *596 which the opinion is made to rest." (135 N.J.L., at p. 7) In Kelly v. Martino, 375 Pa. 244, 99 A.2d 901, 902 (Sup. Ct. 1953), it was said:
"There can be no doubt that the doctor, called as an expert witness, was empowered to state his scientific opinion on facts presented to him, because that is the very purpose of expert testimony. The expert does not warrant the accuracy of the facts; he only assumes responsibility for the conclusion he draws from the assumed facts. If the jury accepts the foundation of fact it then decides what credence it will impart to the doctor's reasoning and applied medical knowledge built upon that foundation. If the jury detects fissures of undependability in that foundation, then the expert opinion necessarily falls of its own weight."
It is always within the special function of the jury to decide whether the facts on which the answer of an expert is based actually exist and the value or weight of the opinion of the expert is dependent upon and no stronger than the facts on which it is predicated. 32 C.J.S., Evidence, § 569b., pp. 395, 396; Zaklukiewicz v. Western Electric Co., 16 N.J. Super. 189, 197 (App. Div. 1951); Ortzman v. Van Der Waal, 114 Cal. App.2d 167, 249 P.2d 846, 849, 252 P.2d 7 (D.C. of App. 1952). Medical conclusions based upon subjective symptoms may be entitled to correspondingly lessened probative force. Brouillard v. S.S. Kresge Co., 41 F. Supp. 945, 946 (D.C.W.D. Wis. 1941); Salo v. Dorau, 191 Wis. 618, 211 N.W. 762, 764 (Sup. Ct. 1927).
As there was evidence in the present case from which the jury might find that Mrs. Panko was not entirely truthful and was given to exaggeration of her symptoms and from which it might have inferred that she knew that Dr. Schulman was examining her for purposes of advising the defendant in a pending action for damages, it might properly have considered these factors in assessing the factual trustworthiness of Dr. Schulman's information concerning her condition, and, consequently, the weight attributable to the doctor's conclusion as to permanency. But the court withheld from it the weighing of those considerations when it instructed the jury to take as a fact the existence of some degree of permanency.
*597 Plaintiff contends that the matter of permanency of the injury was exclusively for resolution on the basis of the medical proofs, as a jury cannot be regarded as possessed of sufficient knowledge to qualify it to pass judgment in the medical realm. Ravitz v. Chirelstein, supra, 135 N.J.L., at page 7. But the premise is not pertinent where, as here, there could be conflicting inferences from the medical data adduced. Slight conflict in the evidence will generally make the issue of permanency of physical injuries one for the jury. See Simpson v. Mary Lee Candies, Inc., 35 N.E.2d 869, 870 (Ohio Ct. App. 1939); New York Life Insurance Co. v. Torrance, 228 Ala. 286, 153 So. 463 (Sup. Ct. 1933), denying certiorari to the decision in 26 Ala. App. 38, 153 So. 458 (Ct. App. 1933); Puffer v. C.E. Chappell & Sons, Inc., 123 N.Y.S.2d 468, 472 (Sup. Ct. 1953), affirmed 284 App. Div. 831, 131 N.Y.S.2d 921 (App. Div. 1954); Kimic v. San Jose Los-Gatos Interurban Ry. Co., 156 Cal. 273, 104 P. 312, 314 (Sup. Ct. 1909); Southwestern Greyhound Lines v. Dickson, 228 S.W.2d 232, 243 (Tex. Civ. App. 1950), reversed on other grounds, 149 Tex. 599, 236 S.W.2d 115 (Sup. Ct. 1951). Cf. Barbato v. Prudential Insurance Co. of America, 11 N.J. Misc. 355, 165 A. 872 (Sup. Ct. 1933), an action on an insurance policy payable upon permanent disability, which was presumptive under the policy after disability for ninety days. In that case defendant's medical experts testified that plaintiff could have resumed work prior to the expiration of ninety days. The plaintiff's testimony, unsupported by expert proof, was to the effect that he was unable to use his arm for seven months. A finding by the trial court, sitting without a jury, in favor of the plaintiff was affirmed, the court holding that a fact issue had been presented. As was said by the Supreme Court of the situation before it in Flexmir Inc. v. Lindeman & Company, 8 N.J. 602, 605 (1952), the factual case here presented is not akin to "a scientific or mathematical problem, which could be determined with certainty, and in which only one correct answer could be arrived at."
*598 Plaintiff cites Orsini v. Metropolitan Life Insurance Co., 9 N.J. Misc. 407, 154 A. 201 (Sup. Ct. 1931) and McAuliffe v. Metropolitan Life Insurance Co., 93 N.J.L. 189 (E. & A. 1919). These cases are plainly distinguishable. Both were life insurance cases in which recovery on the policy was denied on the basis of indisputable and concordant medical testimony that the assured had been afflicted by a specific disease, contrary to the provisions of the policies. In neither case could reasonable men disagree on the proofs as to the existence of the determinative physical condition.
Plaintiff makes the point that defendant conceded the fact of permanency at the trial, and therefore abandoned the issue, by adducing the testimony of Dr. Schulman. This contention is without merit. Nothing in the transcript of the record evidences any waiver by defendant of her ordinary right to require plaintiffs to prove the extent of their damages and injuries. Defendant can no more be charged with an abandonment of her defense as to permanency on the basis of the testimony of Dr. Schulman than Mrs. Panko could properly be charged with surrender of her position with respect thereto by the failure of her own medical witness to support it.
Defendant raises as an additional ground of appeal the contention that the trial court erred in compelling counsel for the defendant to sum up at the trial before plaintiff's counsel. The pretrial conference order provided that the order of opening and closing to the jury would be as "usual." The rules of court provide that unless otherwise fixed in the pretrial order, the plaintiff shall make an opening statement and the defendant follow with an opening statement immediately thereafter. R.R. 4:44-1. But there is no provision concerning closing statements. The practice in this regard in this state has been more a matter of local custom than fixed rule. In some of the southern counties of the state the practice contended for by defendant is generally followed; i.e., the plaintiff opens in summation, the defendant answers, and the plaintiff replies, being limited in the scope of his final argument to the position he has *599 taken in opening. This is the rule usually followed elsewhere; 53 Am. Jur., Trial, § 462, pp. 366-368. In most of the counties of this State, however, it has been customary for the defendant to present his summation first and for the plaintiff to conclude with his full argument at one time. In the absence of a specific rule of court, the matter of procedure in summation would seem to rest in the sound discretion of the trial court. See Sullivan v. State, 46 N.J.L. 446, 447, 448 (Sup. Ct. 1884), affirmed 47 N.J.L. 151 (E. & A. 1885); cf. Aladdin Oil Burner Corp. v. Morton, 117 N.J.L. 260 (Sup. Ct. 1936).
There is no showing as to what the "usual" order of summation was in the county where this action was tried. Moreover, defendant has not demonstrated that she was prejudiced by the ruling of the court, except in a purely theoretical sense. We consequently find no reversible error, if any at all, in the procedure directed by the trial court. R.R. 1:5-3(b).
The error in the charge of the court to the jury concerning the permanency of Mrs. Panko's injuries may well have had an effect upon the amount of the verdict returned for the plaintiff, George Panko, as well, insofar as that may be deemed to have included loss of consortium. The retrial will therefore include the issues of the damages of both plaintiffs. Other grounds of appeal urged by defendant have to do with alleged excessiveness of the verdict, but, in view of our determination, we need not consider them. As there was no trial error which would impugn the jury verdict with respect to liability, the retrial will be as to damages only.
Reversed and remanded for a new trial as to damages only.