**PRECISIONWARE, INC., Appellant,**

v.

**MADISON COUNTY TOBACCO WAREHOUSE, INC., Appellee.**

**MADISON COUNTY TOBACCO WAREHOUSE, INC., Appellant,**

v.

**PRECISIONWARE, INC., Appellee.**
**No. 26113.**

United States Court of Appeals
Fifth Circuit.
May 8, 1969.

Rehearing Denied June 18, 1969.

Robert P. Smith, Jr., E. Earle Zehmer, Walter L. Robison, Jacksonville, Fla., for appellant.

Adam G. Adams, II, Jacksonville, Fla., J. Ben Watkins, Tallahassee, Fla., Randell H. Rowe, Jr., Madison, Fla., Truett & Watkins, Tallahassee, Fla., Adams & Adams, Jacksonville, Fla., for appellee.

Before PHILLIPS *, BELL, and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The appellant-tenant Precisionware, Inc., seeks reversal of a judgment growing out of a tortious claim which arose from a lease agreement with Madison County Tobacco Warehouse, Inc., its landlord.

* Of the Tenth Circuit, sitting by designation.

Madison bases its claim against Precisionware for damages sustained because of negligence in causing a fire which destroyed its warehouse, a portion of which was being occupied by defendant-tenant under a written lease agreement.

Madison's complaint contained two counts. The first count alleged that the defendant Prescisionware's negligence caused the fire and permitted it to spread and destroy the plaintiff's warehouse and contents thereof. The second count realleged the specific acts of negligence and further alleged that such conduct constituted a violation of the lease covenants in that the tenant was guilty of wilful negligence. Under each count the plaintiff claimed damages in the amount of $175,000.00 plus interest and court costs.

The second count of the complaint was dismissed upon a finding by the District Court that the lease terms would only give rise to recovery in the event of wilful negligence. We are not concerned with Count Two, as the appellee does not contend that this ruling was error.

The lease contract originated from the efforts of an industry-seeking group in Madison, Florida, who began to encourage the defendant to locate a factory in Madison. After much negotiations, the defendant entered into a written lease agreement by which it would lease 40 percent of the plaintiff's warehouse for five years with an option for renewal. The annual rental to be paid was $4,000.00. By the terms of the lease,[1] the

---

1. The pertinent terms of the lease are as follows:

   *Covenants of Lessee*

   1. The lessee does hereby covenant and agree with the lessor that it will:
      (a) * * * (not applicable)
      (b) use and occupy said premises in a careful and proper manner; when considered in the light of the business in which the lessee is engaged;
      (c) not commit any waste therein;
      (d) not use or occupy said premises for any unlawful purpose, and will conform to and obey all present and future laws and ordinences, and regulations;
      (f) * * * (not applicable)
      (g) leave the premises at the expiration of the term of this lease or any renewal or extension thereof, in as good condition as received, the reasonable use and wear and tear thereof in the meantime only excepted;
      (h) * * * (not applicable)
      (i) indemnify and save the lessor harmless from and against any loss, damage and liability occasioned by, growing out of, or arising or resulting from any default hereunder, or any wilfully tortious or negligent act on the part of the lessee, its agents or employees.

   *Covenants of the Lessor*

   2. And the lessor on its part covenants and agrees with the lessee that:
      (a) There are no violations in connection with premises herein demised. It will maintain the demised premises in good repair and tenantable condition during the continuance of this lease, except in case of damage arising from the negligence of the lessee or its agents or employees; including plumbing and heating facilities;
      (b) It will indemnify and save the lessee harmless from and against any loss, damage and liability occasioned by, growing out of, arising or resulting from any default hereunder or any tortious or wilfully negligent act on the part of the lessor, its agents or its employees;
      (c) * * * (not applicable)
      (d) * * * (not applicable)

   *Mutual Covenants*

   3. It is mutually agreed by and between the lessor and the lessee that:
      (a) that the lessee may and shall make such alterations as it sees fit, from the following list of items, to make the said premises better suited to the operations of the lessee, and the lessor shall pay for the cost of these alterations up to and including a maximum amount of $10,000.00;
      (1) Construction of a partition separating the leased premises from the remainder of the house building;
      (2) Installation of toilets and lavatories as required by the Public Health regulations of the State of Florida;

defendant agreed to use the premises in a careful and proper manner; not to commit waste; not to engage in any illegal activity; to leave the premises in the same condition, except for reasonable use and wear; and to indemnify the plaintiff for any damages caused by wilfully tortious or negligent acts on the part of the defendant Precisionware. Madison covenanted that there were no violations of statutes or ordinances in the construction of the building or in any other aspect of the leased premises; that the premises would be maintained in good repair except in the case of damage arising from the negligence of the defendant; that the defendant would be indemnified for any loss occasioned by any tortious or any wilfully tortious or negligent act on the part of the plaintiff; and that up to $10,000.00 would be spent on alterations to the warehouse as required by Precisionware's operation and as specified by it.

>    (3) Installation of a heating system;
>    (4) Installation of industrial electrical wiring;
>    (5) Construction of paint spray booths and drying rooms;
>    (6) Such other alterations as to the lessee may seem necessary or desirable.
> (b) * * * (not applicable)
> (c) If the leased premises shall be partially damaged by fire, * * * but in event of the total destruction of the building by fire or otherwise, or in case the damage to said premises shall be so extensive that they cannot, in the opinion of the lessor, be repaired in ninety days, then the rent shall be paid up until the time of such destruction or damage, and this lease shall become void at the option of the lessee.
> (d) * * *
> (e) * * *
> (f) * * *
> (g) * * *

2. *Modification of Lease*
   The Lessee agrees to pay all increases, if any, in the cost of existing insurance due to the Lessee's occupancy of the demised premises.

Precisionware was engaged in the cabinet manufacturing business which is regarded as highly fire-hazardous. With regard to the risk of loss by fire and the additional cost of the plaintiff's fire insurance due to the defendant's occupancy, the parties agreed to a modification of the lease.[2] This modification provided that Precisionware would pay all increases in existing insurance on the premises to the extent that such increases could be attributed to Precisionware's occupancy.

On November 8, 1963, a fire destroyed the entire warehouse and the contents thereof. Madison received $61,000.00 in fire insurance payments from the insurance on which substantial premiums had been paid by the tenant Precisionware pursuant to the modification of the lease.[3] Madison also received an additional $20,000.00 in fire insurance benefits from insurance which it had purchased on its own during the term of the lease.

> (A) Provided that said increase is objectively provable to be the direct result of Precisionware's occupancy.
> (B) Provided the insurance value of $60,000.00 now on the building remains the same. Lessee is not responsible for any more insurance, put on the building by Lessor.
> (C) If Lessee should put in a Sprinkler System, in building or any portion thereof, which lessee may then occupy and because of said Sprinkler, the present insurance rate is reduced for the Landlord, then Landlord will immediately pay said saving to Lessee and shall apply said saving only for the purpose of paying towards the cost of said Sprinkler System.

3. Under the terms of the modification to the lease agreement, Precisionware was to pay for the increase in insurance rate due to its occupancy. Prior to tenant's occupancy, Madison carried $61,000.00 fire insurance on the structure at a rate of $1.31 (total premium $707.40). In 1959, the rate was increased and Precisionware paid, on account of the increase in these premiums, $2,406.00 in 1959, $2,165.40 in 1960, $2,165.40 in 1961, $1,911.60 in 1962, and $621.27 in 1963, the year of the fire loss.

The District Court excluded from the jury any evidence of payment of the $61,000.00 insurance proceeds paid by the insurance companies for the loss of the building under the policies in force on which Precisionware had paid a substantial part of the premiums.

The case was submitted to the jury on the claim for damages by the landlord that the tenant was negligent in certain respects, and on the defense of the tenant that the landlord had violated the fire code of the City of Madison by not providing suitable fire walls, and that the absence of such fire walls proximately contributed to the damages for which the landlord was complaining.

The District Court charged the jury that:

> "If you find for. the defendant, you will not consider the matter of damages, but if the evidence proves negligence which was a legal cause of damage to plaintiff and for which defendant is responsible, you should award plaintiff an amount of money that will fairly and adequately compensate it for such damage.

> "The proper measure of damages is the difference between the value of plaintiff's property immediately before the fire complained of and immediately thereafter."

Precisionware, by its appeal, first asserts that the lease agreement excluded any liability for ordinary negligence on its part, and by the terms of the lease it would only be liable for any "wilfully tortious or negligent act on the part of the lessee, its agents or employees". The tenant claims that the District Court's ruling violates fundamental principles of law respecting the integrity of written contracts and that the implication of a "common law" obligation to indemnify for the results of ordinary negligence not only adds an obligation not expressed in the lease, but also renders futile and of no effect each party's written covenant to indemnify the other for the consequences of wilful negligence. After examining the entire lease agreement, together with its modification, we cannot agree with the construction of the lease agreement as contended by Precisionware.

In construing this agreement, the lease as a whole must be examined, and a court should look at the entire instrument and not merely particular provisions. Lalow v. Codomo, 101 So.2d 390 (Fla.Sup.Ct., 1958) It is a basic proposition in the law of landlord and tenant that it is the duty of the tenant to exercise ordinary care in the use of the leased premises or property and not to cause any material and permanent injury thereto over and above the ordinary wear and tear, and that the tenant is liable to the landlord for damages for any such injury unnecessarily resulting from his wrongful acts or his failure to exercise ordinary care. In order to exculpate itself from the legal consequences of its negligence, it is well established that exculpation must be spelled out with such clarity that the intent to negate the usual consequences of tortious conduct is made plain. See Maiatico v. Hot Shoppes, Inc., 109 U.S.App.D.C. 310, 287 F.2d 349 (1961); Chicago and N. W. Ry. Co. v. Chicago Packaged Fuel Co., 195 F.2d 467 (7 Cir., 1952). As Judge Rives of this Court stated in Aerial Agricultural Service of Montana v. Richard, 264 F.2d 341 (5 Cir., 1959):

> "It is elementary that if an express agreement exempting the defendant from liability for negligence is to be sustained, it must appear that its terms were brought home to the plaintiff, and that the express terms of the agreement apply to the particular negligence."

We agree with the District Court's construction of the lease that Precisionware would be liable to exercise ordinary care in its use and occupancy of the warehouse of Madison.

By its second contention, Precisionware asserts that the landlord

Madison is barred in its claim for failure to comply with the mandatory ordinances of the City of Madison respecting the construction of the fire walls for its protection, and that this negligence contributed to the loss of the warehouse. This was a hotly contested issue in the trial of the case below. Under Florida law, where the negligence complained of was the violation of a municipal ordinance designed to protect the public generally, there is no right of recovery unless the injury was the proximate result of such negligence. Richardson v. Fountain, 154 So.2d 709 (Fla.App.1963). Whether the landlord Madison's violations of the City Code of Madison in failing to construct the proper fire walls was negligence which proximately caused the destruction of the warehouse was a question for the jury. See Mastrandrea v. J. Mann, Inc., et al., 128 So.2d 146 (Fla.App., 1963). The trial court properly submitted this question to the jury, and the jury decided against the tenant Precisionware.

The third contention of the tenant Precisionware is that the District Court should have credited the landlord's insurance benefits, in the amount of $61,000.00,[4] against the judgment of $57,750.00, as found by the jury as Madison's loss in the destruction of the building and its personal property.

After the District Court's instructions on damages, supra, the jury returned a verdict which read as follows:

"We, the Jury, find for the plaintiff, Madison County Tobacco Warehouse, Inc., and against the defendant, Precisionware, Inc., and assess plaintiff's damages in the sum of $57,750.-00 together with interest thereon at the rate of 6 percent per annum from November 8, 1963."

The jury found by its verdict negligence on the part of Precisionware and damages to the warehouse and personal property of the landlord in the amount of $57,750.00.

Precisionware asserted in its answer and now contends that credit should be allowed for the $61,000.00 paid by the insurance companies for which it paid a substantial portion of the premiums. The District Court refused to permit Precisionware to show before the jury that the $61,000.00 of insurance benefits, for which Precisionware paid more than $9,200.00 in premiums over the years during which the tenant occupied the premises, was paid to the landlord by the various insurance companies.

The lease contract provided for the return of the premises at the expiration of the term of the lease or any renewal or extension thereof in as good a condition as received, the reasonable use and wear and tear thereof in the meantime only excepted; and to assure such, the tenant paid $9,200.00, at their own cost and expense, to help carry $61,000.00 in insurance on the leased property, with a loss payable to the landlord, Madison. The lease contract also provided for termination of the lease in the case of fire destroying the building.

An examination of the lease and the evidence of the hazards of the particular manufacturing plant indicates that "loss by fire" was uppermost in the minds of the parties to the agreement, and that the supplement to the lease providing for the increases in premiums to be paid by the tenant further emphasizes their concern.

When the warehouse was so destroyed, Madison's loss was the value of the destroyed property—that was its interest in the insurance and when paid, of course, satisfied the loss, if the loss equalled or was less than the amount of insurance. To permit Madison to keep the insurance money in the case at hand,

4. The landlord, Madison County Tobacco Warehouse, Inc., held an additional policy on the warehouse and received $20,-000.00 for the loss. Madison paid the entire premium on this additional insurance.

**48**

and then to collect from Precisionware would be a double recovery not sanctioned by law. As the jury determined that Precisionware's negligence caused the fire, Precisionware is liable for its negligence, but when it helped provide for the resulting damages by paying a substantial part of the premiums to an insuring company and when those insurance payments have more than provided for the resulting damages, Precisionware has satisfied the claim of Madison. See Publix Theatres Corp. v. Powell, 123 Tex. 304, 71 S.W.2d 237 (Tex.Comm. App., 1934).

We are cognizant of the line of authorities holding that the payment of insurance monies to which the wrongdoer does not contribute does not relieve the tenant from liability.[5] However, the case at hand is entirely different. Here the lease agreement required Precisionware to pay a substantial part of the premiums for keeping the property insured against destruction by fire. Here the alleged wrongdoer was in privity to the insurance companies as well as the landlord, and actually contributed and paid directly to the companies a substantial part of the insurance premiums.

The District Court should credit the insurance payments of $61,000.00 on the loss sustained by Madison County Tobacco Warehouse, Inc., which amount, when credited on the judgment, will satisfy the judgment. As this loss was determined by the jury to be in the amount of $57,750.00, and the payment for the loss of the structure by the insurance companies exceeded this amount, the interest to compensate Madison for the use, detention or deprival of its property is not due.

Reversed and remanded for further proceedings not inconsistent herewith.

---

5.  Hill v. Condon, 14 Ala.App. 332 (1915), 70 So. 208; Messina v. Bomicino (La. App., 1946), 27 So.2d 397; Ward v. Mitchell, 216 Miss. 379, 62 So.2d 388 (1953).