301 S.E.2d 192

**E.B. JONES**

v.

**TWO RIVERS FORD, INC., etc., et al.**

No. 15404.

Supreme Court of Appeals of
West Virginia.

March 10, 1983.

Musgrave, Musgrave & Casey, Raymond G. Musgrave and James M. Casey, Point Pleasant, for appellants.

Huddleston, Bolen, Beatty, Porter & Copen, R. Kemp Morton, Andrew S. Zettle, Huntington, Shaw & Stein and R. Michael Shaw, Point Pleasant, for appellee.

MILLER, Justice:

The defendants, Two Rivers Ford, Inc., et al.,[1] appeal from the final order of the Circuit Court of Mason County denying their motion to set aside the verdict and grant a new trial. The main errors asserted are that the trial court should not have directed a verdict on liability against the defendants and should not have set the range of damages recoverable.

The defendants were the tenants of a building located in Point Pleasant under a written lease, which contained certain clauses in regard to upkeep and repair.[2]

---

**1.** The named defendants as styled in the trial court were: Two Rivers Ford, Inc., a corporation, Two River Motor Company, a corporation, Robert E. Beymer d.b.a. Two River Motor Company, Robert E. Beymer d.b.a. Two Rivers Ford, Inc., Robert E. Beymer d.b.a. Two Rivers Ford, and Robert E. Beymer, individually.

**2.** The lease contained the following provisions:

"1. The Tenant, for itself and its successors and assigns, agrees as follows:

"(g) That if any damages to the property shall be caused by its acts or neglect, the Tenant shall forthwith repair such damage at its own expense; and should the Tenant fail or refuse to make such repairs within a reasonable time after the occurrence of such damage, the Landlord may at their option

The building was subsequently totally destroyed by a fire. The plaintiffs E.B. and Nedra Jones were the owners and landlords and brought suit alleging that the fire was a result of the tenants' negligence.

At trial the plaintiffs' expert witness, E.L. Roush, who was an assistant State fire marshal, gave his opinion as to the cause of the fire. He believed that the boiler in the basement of the building overheated. This caused the temperature in a flue pipe that ran from the boiler to the outside of the building to rise to the level of 400° F. The heat from the flue pipe in turn ignited some dried vines which had grown over the outside wall of the building and around the flue pipe. The plaintiffs contended that the defendants violated an ordinance of the City of Point Pleasant relating to accumulation of waste material by permitting the vines to grow on the outside wall.[3]

The defendants attempted to counter the plaintiffs' theory through the testimony of John Smith, a local heating and plumbing contractor, who had serviced the boiler prior to the fire. He testified that approximately one week before the fire he had inspected the boiler, did some repair work and put a new water feeder on it. He said that he found a crack in one section of a steam line inside the boiler but was unable to repair it since he had to order a new part. He felt that the boiler could still be operated, but lowered the gas valve and advised that the thermostat should be lowered. Smith further testified that the temperature of the flue pipe could never rise to a combustible level and, therefore, the vines could not be ignited by the flue pipe.

At the conclusion of all the evidence the trial court granted the plaintiffs' motion for a directed verdict in regard to the defendants' liability on the basis that the vines on the outside of the building which had grown into and around the flue pipe were in violation of the city ordinance and that this constituted *prima facie* evidence of negligence.

The critical point is that there was a dispute as to what caused the vines to ignite. Both parties agree that the lease's covenants to repair do not in view of W.Va. Code, 36–4–13,[4] make the defendants responsible for a fire loss. In *McKenzie v. The Western Greenbrier Bank*, 146 W.Va. 971, 980, 124 S.E.2d 234, 239 (1962), we acknowledged that this statute had changed the common law:

> "At common law where a covenant to repair was contained in the lease and the building was destroyed by some fire or casualty the lessee was responsible for repairs thereto, whether he was at fault or not. However, the common law rule has been changed in both Virginia and West Virginia, and the lessee is now only liable for damages under such conditions when it is shown that the damage is caused by his fault or negligence....

> "This statute [W.Va.Code, 36–4–13] not only applies to damage by fire, but damage caused in any other manner, and

make such repairs and charge the cost thereof to the Tenant, and the Tenant shall thereupon reimburse the Landlord for the total cost of all damages so caused.

"(h) To take care of all maintenance of said real estate and buildings thereon, both inside and outside, including the roofs on all buildings, said maintenance to be of such a quality so as to prevent any deterioration of said real estate and buildings."

3. An ordinance of the City of Point Pleasant adopted the Fire Prevention Code, Edition of 1965. Section 164 of the Fire Prevention Code states:

"Accumulations of Waste Materials

"Roofs, courts, yards, vacant lots and open spaces shall be kept free and clear of deposits or accumulations of waste paper, hay, grass, straw, weeds, litter or combustible waste or rubbish of any kind. All weeds, grass, vines or other growth, when same endanger property, or is liable to be fired, shall be cut down and removed by the owner or occupant of the property."

4. W.Va.Code, 36–4–13, provides:

"No covenant or promise by a lessee that he will leave the premises in good repair shall have the effect, if the buildings or other structures are destroyed by fire or otherwise, in whole or part, without fault or negligence on his part, of binding him to erect such buildings again, or to pay for the same or any part thereof, unless there be other words showing it to be the intent of the parties that he should be so bound."

not only applies to damage to the whole, but to a part thereof. Therefore, it applies to any damage in connection with a clause in a lease to leave the premises in as good repair or condition as when leased."

 Thus, it is clear that W.Va.Code, 36–4–13, has altered the common law to the extent that a covenant by a lessee to repair will not automatically make him responsible to repair or rebuild the leased premises which are damaged or destroyed by fire unless such damage is a result of his negligence. This same point was reaffirmed in *Davidson's, Inc. v. Scott*, 149 W.Va. 470, 140 S.E.2d 807 (1965), where we stated in Syllabus Point 1:

> "The mere occurrence of a fire with resultant damages does not, as a general rule, raise an inference of negligence, and the doctrine of *res ipsa loquitur* is ordinarily not applicable in such cases."

 Neither party disagrees that the plaintiffs' case by virtue of Roush's testimony established the flue pipe as the source of ignition and this coupled with the ordinance would carry the case to the jury as to the defendants' negligence. However, the assistant fire marshal's testimony as to the source of ignition was controverted by the defendants' Witness Smith who testified the flue pipe could not attain a combustible temperature and could not have ignited the vines. Thus, a clear issue of fact was created as to whether the source of ignition was a result of any negligence on the part of the defendants.

The plaintiffs rely on *Stone Mountain Industries, Inc. v. Bennett*, 112 Ga.App. 466, 145 S.E.2d 591 (1965), a case involving a similar ordinance. The tenant, a furniture manufacturer, utilized a highly inflammable varnish which was exhausted from the building and coated the weeds that were growing adjacent to the building. The weeds subsequently ignited, and the court concluded that the inflammable coating of the weeds created a dangerous condition. It utilized this quotation from 38 Am.Jur. *Negligence* § 73, at 731 (1941): "One who negligently creates a dangerous condition cannot escape liability for the nat-

ural and probable consequences thereof, although the innocent act of a third person may have contributed to the result." The only issue before the court in *Stone Mountain Industries, Inc. v. Bennett* was whether the plaintiff's complaint stated a sufficient cause of action to withstand the defendant's demurrer and the court concluded that it was sufficient.

We do not believe that the existence of the vines on the building in the present case created a dangerous condition in the same sense. A more analogous case is *Precisionware, Inc. v. Madison County Tobacco Ware, Inc.*, 411 F.2d 42, 47 (5th Cir.1969), where the tenant argued that the landlord violated a city ordinance in regard to fire walls and that this was the proximate cause of the fire loss and the court concluded: "Whether the landlord Madison's violations of the City Code of Madison in failing to construct the proper fire walls was negligence which proximately caused the destruction of the warehouse was a question for the jury."

 In *Simmons v. City of Bluefield*, 159 W.Va. 451, 225 S.E.2d 202, 88 A.L.R.3d 105 (1975), a plaintiff who had been burned by a fire started by a city employee claimed that the fire was unattended in violation of a municipal ordinance, and in Syllabus Point 3 we set this rule:

> "The violation of a municipal ordinance creates a prima facie case of negligence and the determination as to whether there was in fact a violation and whether the violation was the proximate cause of the injury is within the province of the jury."

*See also Barniak v. Grossman*, 141 W.Va. 760, 93 S.E.2d 49 (1956); *Somerville v. Dellosa*, 133 W.Va. 435, 56 S.E.2d 756 (1949); *Rich v. Rosenshine*, 131 W.Va. 30, 45 S.E.2d 499 (1947).

Of more direct bearing is *Cross v. Noland*, 156 W.Va. 1, 190 S.E.2d 18 (1972), where the plaintiff claimed that she was entitled to a directed verdict based on the fact that the defendant had violated a municipal ordinance relating to the backfilling of excavations. The plaintiff was injured

when she drove her car along a city alley where the defendant had dug and then backfilled a trench. When the car crossed the backfilled trench, its left front wheel dropped into the backfilled excavation causing her to be thrown forward and receive a back injury. We rejected the plaintiff's directed verdict claim stating:

"While it·is a valid proposition of law that a violation of a municipal ordinance creates a prima facie case of negligence, and the jury was so instructed, such violation does not constitute actionable negligence unless it was proved to be the proximate cause of the injury.... The jury having been properly instructed on this principle of law, it was their prerogative to determine whether or not the violation of the ordinance was the proximate cause of the injury." 156 W.Va. at 4–5, 190 S.E.2d at 21. (Citations omitted)

From the foregoing authorities, we are persuaded that the trial court erred in holding as a matter of law that the plaintiffs were entitled to a directed verdict based on the defendants' violation of the city ordinance.

The defendants further claim that the trial court was incorrect in directing the jury that its damage award should be between $212,500 and $275,377. These were the high and low damage estimates as testified to by the plaintiffs' expert witnesses. The defendants offered no damage witness but did cross-examine the plaintiffs' damage witnesses.

■■■ The general rule appears to be where damages are in an unliquidated amount in the absence of some unusual circumstance it is error for the trial court to instruct the jury as to a specified amount that should be returned. 75 Am. Jur.2d *Trial* § 524 (1974). In Syllabus Point 2 of *Fayetteville Building & Loan Ass'n v. Mutual Fire Ins. Co. of West Virginia*, 105 W.Va. 147, 141 S.E. 634 (1928), we adopted much the same rule:

"Where the evidence does not with certainty disclose the amount which plaintiff is entitled to recover, but such amount is left in doubt, it is error for the trial court to direct a verdict for a specific sum."

Some courts have pointed out that where the amount of damages is based upon opinion testimony then the determination of such amount should be left to the jury on the basis that it is entitled to weigh and determine the credibility of such testimony. *Panko v. Grimes*, 40 N.J.Super. 588, 123 A.2d 799 (App.Div.1956); *S.S. Silberblatt, Inc. v. Travelers Indemnity Co.*, 23 A.D.2d 840, 259 N.Y.S.2d 673 (1965). In *Skjonsby v. Ness*, 221 N.W.2d 70, 76 (N.D.1974), the court quoting *Bolen v. Dolph*, 62 N.D. 700, 704, 245 N.W. 259, 260 (1932), stated:

" 'Where the amount of damages claimed by either party is uncertain and based upon opinion, then it is entirely within the province of the jury to find the amount of the damages. In such cases it is an invasion of the province of the jury for the court to direct the finding of a certain amount.' " (Emphasis deleted)

In the present case, the plaintiffs' damage experts utilized the replacement cost less depreciation as the measure of damages to establish the fair market value of the building immediately prior to its total destruction. Part of the defendants' cross-examination of one of the experts centered on the fair market value based on sales of comparable property which produced two comparable sales that were lower than the lowest replacement cost figure. Had the defendants not been foreclosed on the damage issue, they could have argued these figures to the jury. Under the circumstances, we believe the trial court erred in directing the jury to return a verdict between the low and high figures set by the plaintiffs' appraisers on their replacement cost less depreciation estimates.

Because the case is reversed on the foregoing grounds, the plaintiffs' other assignments of error are rather nugatory in light of a new trial.[5] We therefore reverse the

5. The trial court permitted the plaintiff, E.B. Jones, to amend the complaint to add his wife, Nedra Jones, as a party plaintiff since she was a co-owner of the property. Some two months prior to trial the plaintiffs moved to increase the ad damnum clause from $120,000 to $350,000, which the trial court granted at the pretrial conference. The trial court acted properly in

case and remand it to the Circuit Court of Mason County for a new trial in accordance with the principles herein set forth.

Reversed and Remanded.

permitting these amendments under Syllabus Point 3 of *Rosier v. Garron, Inc.,* 156 W.Va. 861, 199 S.E.2d 50 (1973). The defendants complain that they were not furnished the names of the plaintiffs' witnesses but the record contains no discovery motion requesting such information.