**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2104-22

RICKY MARTER,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued July 16, 2024 – Decided July 25, 2024

Before Judges Sabatino and Chase.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx2914.

Samuel Michael Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader PC, attorneys; Samuel Michael Gaylord, on the brief).

Jeffrey D. Padgett, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen on the brief).

PER CURIAM

Ricky Marter appeals from a March 16, 2023 final agency decision by the Board of Trustees ("Board") of the Public Employees' Retirement System ("PERS") denying his claim for accidental disability retirement benefits under the criteria set forth in N.J.S.A. 43:16A-7(1) and construed by Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189 (2007), after finding he was not "permanently and totally disabled." We affirm.

I.

We derive the pertinent facts from the prior appeal in this matter, where we remanded for reconsideration of the Board's wholesale adoption of the Administrative Law Judge's ("ALJ") initial decision and denial of benefits. Marter v. Bd. of Trs, Pub. Emps.' Ret. Sys., No. A-3024-19 (App. Div. Jan. 31, 2022) (slip op. at 9).

In January 2010, appellant was a Senior Detention Officer at the Monmouth County Juvenile Detention Center ("Center") when he slipped on a wet floor and hit his head. It is unclear whether he lost consciousness in the fall, but he was taken to a hospital, treated, and released. He contends the head injury caused him to suffer memory loss and cognitive deficits. He stopped working due to the alleged disability.

Appellant was first evaluated and treated in 2011 by Dr. Alan Colicchio, a neurologist, who diagnosed him with a cerebral concussion. Dr. Colicchio, however, found appellant to be alert and oriented to person, place, and time, and found immediate, recent, and remote memory intact. Also in 2011, appellant was evaluated in two Independent Medical Examinations ("IMEs") by Dr. Jeffrey Pollock, a neurologist, and Dr. Allan Burstein, a psychiatrist. Dr. Pollock conducted a neurological examination, which found that despite his complaints of short-term memory loss and other ailments, appellant was alert and coherent with slow and deliberate movements that appeared exaggerated. Dr. Pollock expressed his doubt that the "minor nature of the head injury" would result in the "multiplicity of complaints by [appellant]." Moreover, Dr. Pollock observed appellant to have dirty hands that were callused and a paint spot on his left knee, which indicated "significant physical activity." Despite appellant's complaints, which included that he could not function in the most basic way (e.g., he claimed he could not even make cereal for himself), Dr. Burstein found appellant did not suffer a major head injury and was possibly malingering. Both doctors concluded appellant was not permanently and totally disabled, perceiving appellant was exaggerating his symptoms.

3

A-2104-22

According to appellant's testimony at the hearing and various statements he made to the examining doctors, he allegedly cannot perform mentally difficult tasks and generally stays home and is inactive. However, a surveillance video from 2011 showed appellant doing vigorous activities such as using a leaf blower, mowing the lawn, swinging an axe, using a power saw, and power-washing a deck. Appellant also admitted in his testimony he continues to drive a motor vehicle, read, clean his house, and perform manual tasks.

In 2011, the Board denied appellant's claim for accidental permanent disability, and he requested a contested-case hearing in the Office of Administrative Law ("OAL"). That hearing was delayed for many years because appellant moved, without opposition, to have the case placed on the OAL's inactive list, pending a re-evaluation by an orthopedist. Evidently, appellant decided not to pursue an orthopedic basis for his disability claim and instead relied solely on a claim of neurological and cognitive deficits.

The ALJ heard testimony and reviewed other evidence over two days in May 2019 and August 2019 including testimony from appellant, his treating psychologist, Dr. Theodore Batlas, and the Board's competing expert, Dr. Steven Lomazow, a neurologist.

Dr. Batlas's office administered a series of neuropsychological tests in 2019. Dr. Batlas concluded from those tests, and his own examination and records review, that appellant sustained a permanent disabling head injury in the 2010 incident. He reevaluated the appellant in 2019 and found his condition had not changed. This opinion, based on appellant's self-reported symptoms, medical records, and neuropsychological evaluations, are reflected in both Dr. Batlas's written reports admitted into evidence and his testimony at the administrative hearing.

Dr. Lomazow, meanwhile, concluded from his IME in 2019 that appellant was not permanently disabled and that he was exaggerating his alleged deficits. Dr. Lomazow did not administer separate neuropsychological tests, but instead reviewed appellant's medical records, including the test results from Dr. Batlas, and conducted his own office evaluation of appellant's cognitive and memory functions. Dr. Lomazow found appellant passed his mental-status examination with "flying colors" and no short-term, long-term, or immediate memory deficits were present. Dr. Lomazow also noted the various strenuous activities performed by appellant on the 2011 video surveillance and appellant's failure to admit he could perform those physical functions. Dr. Lomazow's observations

and opinions are set forth in his written report admitted into evidence and his testimony at the hearing.

Pursuant to our remand and In re Kallen, 92 N.J. 14, 23 (1983), the Board referred the matter back to the ALJ for reconsideration and clarification of her findings and, if appropriate, additional factfinding. Although no additional testimony was taken, both parties submitted supplemental briefing. On November 15, 2022, the ALJ issued a second initial decision again denying appellant's disability application. The ALJ determined appellant was not a credible witness. Specifically, the ALJ determined appellant's complaints of memory loss, headaches, and dizziness were fabricated and he significantly exaggerated his disabilities.

After acknowledging Dr. Batlas and Dr. Lomazow were both highly qualified experts, and that treating physicians' opinions generally are given more weight than that of non-treating physician expert witnesses, the ALJ concluded Dr. Lomazow's testimony was more persuasive than Dr. Batlas's. The ALJ reasoned Dr. Batlas's opinion was based largely on appellant's self-reporting and subjective complaints. In contrast, the ALJ found Dr. Lomazow's opinion was consistent with the medical reports of two other physicians, Dr. Burstein and Dr. Pollock, who both believed appellant was embellishing his injuries. The ALJ

6

also referred to the video surveillance of appellant conducting strenuous and somewhat dangerous activities.

The ALJ found appellant did not satisfy his burden of proving he was totally and permanently disabled from his job as a supervising juvenile detention officer. The ALJ further concluded even if appellant was totally and permanently disabled, the incident was not the direct cause of his allegedly disabling symptoms.

On March 16, 2023, the Board upheld the ALJ's denial of appellant's application. This appeal followed.

On appeal, appellant argues the record does not contain "substantial credible evidence" to support the ALJ's findings as adopted by the Board. He also argues he qualifies for accidental disability because he was permanently disabled from the performance of his regularly assigned duties at the Center.

II.

We are cognizant that appellate review of an administrative agency's final determination is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citation omitted). Our courts generally "recognize that agencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009)

(alteration in original) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)).  Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014).  For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there was a clear showing that[:]  (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-W. Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).  "The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).  "[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)).

Even so, in reviewing agency actions, an appellate court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Hemsey, 198 N.J. at 224 (quoting In re Carter, 191 N.J. 474, 483

8

(2007) (citations omitted)). "While we must defer to the agency's expertise, we need not surrender to it." N.J. Chapter of Nat'l. Ass'n of Indus. & Off. Parks v. N.J. Dep't of Env't Prot., 241 N.J. Super. 145, 165 (App. Div. 1990). We do not automatically accept an agency's interpretation of a statute or a regulation, and we review strictly legal questions de novo. Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

Whether a PERS member is entitled to accidental disability retirement benefits is governed by N.J.S.A. 43:16A-7(1). That statute provides for these benefits "if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." The Court clarified the factors to be analyzed in these matters in Richardson, 192 N.J. at 212-213, providing guidance to unify the disparate tests that had previously been applied to accidental disability retirement benefits determinations. The elements of the test are:

1. that [the member is] permanently and totally disabled;

2. as a direct result of a traumatic event that is

   a. identifiable as to time and place,

   b. undesigned and unexpected, and

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work)

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Id. at 212-13.]

At issue here is the first prong, namely whether appellant is "permanently and totally disabled[.]"

Applying these principles, we are satisfied the testimony and medical records support the ALJ's second initial decision and the Board's adoption of that decision. Because the Board's determination was amply supported by credible evidence, and was neither arbitrary, capricious, nor unreasonable, we discern no basis to intervene. The crux of appellant's challenge is that the ALJ erred in her assessment of the testimony and credibility, and thus erred in concluding he failed to meet his burden of proof. We give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility," In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J.

10

589, 599 (1965)), and defer to credibility findings "that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999).

When reviewing a determination made after consideration of expert testimony, both "the credibility of the expert and the weight to be accorded [that] testimony rest[] in the domain of the trier of fact." Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961). See also LaBracio Fam. P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001) ("[T]he weight to be given to the evidence of experts is within the competence of the fact[]finder.").

"To aid such determinations, our courts have developed a guidepost—where the medical testimony is in conflict, greater weight should be accorded to the testimony of the treating physician." Bialko v. H. Baker Milk Co., 38 N.J. Super. 169, 171 (App. Div. 1955). However, this guidepost is not conclusive, and the factfinder is "not obligated to accept" an expert's opinion, even if the expert was "impressive." State v. Carpenter, 268 N.J. Super. 378, 383 (App. Div. 1993). In essence, the factfinder must use "common sense and ordinary experience," In re Yaccarino, 117 N.J. 175, 196 (1989), particularly "when, as

here, the factfinder is confronted with directly divergent opinions expressed by the experts." State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004). "[T]he expert's statements are to be sifted . . . like other testimony." Angel, 66 N.J. Super. at 86. Factors to consider in evaluating "[t]he testimonial and experiential weaknesses of the [expert] witness," include "his status as a general practitioner, testifying as to a specialty," "the fact that his conclusions are based largely on the subjective complaints of the patient or on a cursory examination," and whether his "premises, as well as his ultimate conclusions," are "contradicted by rebuttal experts and by other evidence of the opposing party." Ibid. (citing Panko v. Grimes, 40 N.J. Super. 588, 596 (App. Div. 1956)).

In turn, while the Board is constrained by N.J.S.A. 52:14B-10(c) against rejecting issues of credibility of lay witnesses, the same is not true for findings based upon expert witness testimony. ZRB, LLC v. N.J. Dep't of Env't Prot., 403 N.J. Super. 531, 561 (App. Div. 2008). Ultimately, "the choice of accepting or rejecting the testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Renan Realty Corp. v. State, Dep't of Cmty. Affairs, Bureau of Hous. Inspection, 182 N.J. Super. 415, 421 (App. Div. 1981).

Here, the Board's adoption of the ALJ's factual findings, based on her credibility determinations, is reasonable and supported by the record. "That [the ALJ] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse this [decision]." Smith v. John L. Montgomery Nursing Home, 327 N.J. Super. 575, 579 (App. Div. 2000). "We rely upon the expertise of the [Board] to separate legitimate from illegitimate claims," Patterson v. Bd. of Trs., State Police Ret. Sys, 194 N.J. 29, 51 (2008). We are satisfied the Board's "determination [here] is founded upon sufficient credible evidence seen from the totality of the record." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980). See also R. 2:11-3(e)(1)(D) (permitting the Appellate Division to affirm an administrative agency decision "supported by sufficient credible evidence on the record as a whole").

Although appellant correctly points out the ALJ mistakenly stated in her analysis that the two IMEs were performed by appellant's treating physicians, and made some other minor factual errors, the ALJ discredited appellant's testimony and based her present decision on the totality of the record, so we deem these errors to be of no moment. See Gerba, 83 N.J. at 189. The ALJ's present post-remand opinion is not tainted by the "degenerative changes" misconception in her original opinion that caused the remand. Appellant's

13

argument that more weight should have been given to his treating physician's testimony does not obviate the fact that the ALJ concluded said testimony was based on appellant's false self-reporting.

To the extent we have not addressed a particular argument, it was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION