## MARTIN v. SHEFFIELD.

No. 6996.   Decided February 3, 1948.   (189 P. 2d 127.)

See 42 C. J., Motor Vehicles, sec. 964. Right of way at street or highway intersections, see note, 47 A. L. R. 595. See, also, 5 Am. Jur. 901.

*E. LeRoy Shields* and *Ralph A. Sheffield,* both of Salt Lake City, for appellant.

*Gustin & Richards,* of Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

This case arose out of an intersection collision on September 16, 1945, at 10th East Street and Wilson Avenue in Salt Lake City. Plaintiff sued and recovered for personal injuries. By a separate cause of action she also recovered damages to her husband's car which she had been driving, which cause of action had been assigned to her by her husband prior to filing suit. Defendant counter-claimed for personal injuries and for damage to his own car. The court successively denied defendant's motion for nonsuit and his motion for a directed verdict against plaintiff. The jury returned a verdict for the plaintiff on both causes of action and defendant appeals.

Defendant assigns errors for reversal of the judgment in substance as follows: (1) That plaintiff did not make out a prima facie case to go to the jury. (2) That the evidence shows that plaintiff was guilty of contributory negligence as a matter of law, which would preclude any right of recovery. (3) That the court failed to properly instruct the jury on defendant's theory.

For purposes of testing the sufficiency of evidence as to defendant's negligence, on motion for nonsuit the court must indulge in every reasonable inference in favor of the competent evidence adduced on behalf of plaintiff. The evidence as to excessive speed on the part of defendant, and as to his alleged failure to yield the right of way to plaintiff, may be summarized as follows:

Plaintiff was driving west on Wilson Avenue, approaching Tenth East street. Defendant was driving north on 10th East Street toward Wilson Avenue. Plaintiff estimated her own speed as about 20 to 25 miles per hour at the time of the collision. She testified that when she was about 50 feet east of the intersection she could see to the south of the intersection a distance of about 75 feet; that she looked to the south and saw no car; that she did not again look to the south until she saw defendant's car so close that the impact was about to occur, and that his car crashed into the left side of her car. She was so stunned from the impact that she did not remember anything until her car came to rest facing east, at a point northwest of the intersection. She did not attempt to estimate the speed of defendant's car other than by saying that it suddenly crashed into her car.

For evidence that defendant was traveling at an excessive rate of speed and that he failed to yield the right of way, plaintiff relied on the testimony of the investigating officer. The traffic officers made their investigation a few moments after the collision. Only the center portions of the two streets are paved. On Wilson Avenue the pavement is 18 feet in width and on 10th East Street 21 feet in width. The officer found no skid marks from the Martin car up to the point of impact. From measurements he took at the scene he found that the point of impact was in the southerly portion of the intersection, about 2 feet south of the center line, about 15 feet west of the east line of the intersection and about 21 feet north of the south line of the intersection. He found skid marks on the pavement leading to the tires on defendant's car, one set on the east being 36 feet in length and the set on the west being 51 feet in length. The officer estimated that the braking power of the car took effect when defendant's car was a little over 30 feet south of the intersection, and that allowing for reaction time, defendant started to apply the brakes when he was about 60 feet south of the intersection. From the straight line skid marks which stopped at the estimated point of impact, there were two sets of skid marks made when defendant's car veered over to

the northwest, a total of 18 feet, measured to the front tires.

The officer measured the distance from the point of impact to the front of plaintiff's car which was then facing east, and found the distance to be 30 feet. He found plaintiff's car facing east a few feet north of a tree stump, with the trunk of a tree 6 inches in diameter lying to the northwest. The tree had been sheered off at a point a little above the ground from the impact of plaintiff's car against said tree. Neither the front nor the rear of plaintiff's car was damaged but the left side was described as "bashed in." He did not observe that the right side was also damaged. He expressed the opinion that it was the left side of plaintiff's car which struck the tree.

On the basis of length of skid marks made by defendant's car, the officer estimated the speed of defendant's car when the brakes were applied, as 27 miles per hour, on the basis of testing the coefficiency of friction on the surface of the street with the car he was operating for the police department. He stated that if the defendant's car ran into the side of plaintiff's car, so that the momentum of defendant's car was retarded or stopped by crashing into the side of plaintiff's car, the estimated speed of defendant's car should be revised upwards. He assumed that the condition of the tires would be wholly immaterial, although he stated that if the surface was oily or otherwise slippery, his estimate might have to be revised downward.

Appellant testified that he was proceeding north at a speed of 20 to 25 miles per hour, although the officer testified that immediately after the collision he had estimated his speed at 25 miles per hour. Appellant testified that when he was 80 to 85 feet south of the intersection he looked to his right and saw respondent 120 to 130 feet east of the intersection, and that he estimated that he could safely enter the intersection, but that at that instant respondent suddenly increased her speed without looking; that he brought his car to a stop before plaintiff entered the intersection, and that plaintiff came 2 or 3 feet over the center line and hooked onto the defendant's car and whipped around

from the bumper where it struck. He estimated that plaintiff was going 40 to 45 miles per hour when she entered the intersection, and he testified his car had come to a full stop and that plaintiff's car struck his car after his car had stopped.

Contrary to the arguments of appellant, the facts were not such that the jury would have been compelled to find that defendant was traveling 25 miles per hour or less or at a reasonable rate of speed, nor that he entered the intersection first so as to have obtained the right of way. Defendant's testimony that he at first believed he could safely enter the intersection when he saw plaintiff's car approaching, in view of other evidence, might warrant an inference that he thought he could beat plaintiff across the intersection. The evidence would not compel a finding that he was in the intersection first, nor that plaintiff's car struck his car.

If the jury found that defendant's car ran into the left side of plaintiff's car, they might well have also found that the movement of his car was stopped or slowed down by the collision and that it did not come to a stop before the impact. There was sufficient evidence of speed from the skid marks to enable the jurors to infer that the speed was excessive under the circumstances. If the jurors believed that when plaintiff was 50 feet east of the east line of the intersection she looked to the south and saw no car within a distance of 75 feet to the south of such intersection, they may have properly concluded that defendant was going at an excessive rate of speed and that he did not reach the intersection ahead of the plaintiff. Since plaintiff was approaching from the right she had the right of way if she either reached the intersection first or at the same time as defendant. If defendant had been going 30 miles per hour or 44 feet per second, from the time he saw plaintiff's car until the collision occurred less than 3 seconds might have elapsed.

The jurors were not required to believe that defendant was either accurate as to his estimates of speed or correct as to distances. They might have concluded that if plaintiff

were 50 feet east of the intersection when she had a view 75 feet to the south, that she looked and that defendant was not yet within view, and that defendant would have had to exceed her speed of 20 to 25 miles per hour to reach the point of impact at the time the collision occurred. Or, the jurors might have concluded that even if defendant had seen plaintiff's car 130 feet east of the intersection when his car was 85 feet south of the intersection inasmuch as he testified that she did not appear to be traveling at an excessive speed when he first saw her, that she could not have increased her speed to 40 or 45 miles per hour by the time she entered the intersection.

Likewise, in view of the fact that plaintiff's car was not damaged in front, the jurors had the right to believe that defendant's car crashed into the left side of plaintiff's car, and that defendant either failed to yield the right of way or that he was traveling at an excessive rate of speed, or that both occurred. The record discloses sufficient evidence of negligence on the part of defendant to make out a prima facie case.

Is the evidence of plaintiff's conduct in the operation of her husband's car such that reasonable minds must conclude that she was guilty of contributory negligence, so that she was precluded as a matter of law from recovering any judgment for personal injuries? There was some evidence in this case that plaintiff failed to keep a proper lookout and that she failed to look to the left as she entered the intersection, and that she was traveling at an excessive rate of speed, from which evidence the jury might have found negligence on her part which contributed to the accident. The only evidence as to her failure to keep a proper lookout which is undisputed, is her testimony that she looked to her left when she was 50 feet from the intersection and that she saw no car and that she looked to her right and did not look to the left again until she was in the intersection and saw defendant's car to her left as it was about to crash into the left side of her car. There was a conflict in the

evidence as to her speed, as to the defendant's speed, and as to whether defendant stopped before the collision or stopped after the impact with plaintiff's car. These factors would all have some bearing on whether failure of plaintiff to look to her left the instant she entered the intersection, contributed to the accident or prevented her from stopping her car short of the point of impact or prevented her from turning to the right to avoid the collision.

Inasmuch as the conclusion whether or not she was negligent must depend upon those disputed factors which constitute the premises for such conclusions, if those premises are jury questions, then they must first be determined before a proper conclusion can be drawn from them. If reasonable minds might differ as to which version of events shall be believed, then reasonable minds might likewise differ as to whether plaintiff's own conduct contributed to the accident. Since those conflicts in evidence which constitute the very premises for the conclusion as to whether plaintiff was contributorily negligent or free from negligence must be resolved by the jury, the court could not properly withdraw from the jury the determination of such issue.

There remains to be considered the assignments of error relating to the alleged failure of the court to properly instruct the jury. Appellant contends that the court failed to charge the jury as to the effect of contributory negligence on the part of plaintiff, refused specified requests of defendant for specific direction to the effect that contributory negligence on her part would in law defeat her right of recovery against the defendant for personal injuries; and that the court so instructed the jury as to defendant's alleged negligence as to advise the jury in effect that if defendant were found to be negligent in such respects her contributory negligence would not defeat recovery.

In the instructions of the court contributory negligence is mentioned but twice. Both are "stock" instructions. One defines contributory negligence, but tells the jury

nothing with respect to its legal effect. In another instruction relating to the burden of proof there is embodied the following:

"If you find from a preponderance of the evidence that plaintiff was injured by reason of the negligence of defendant, as alleged in the complaint, then, in order to defeat plaintiff's right of recovery upon the ground of contributory negligence, the burden is upon the defendant to prove by a preponderance of the evidence on that subject that plaintiff was guilty of negligence that proximately contributed to her own injury in the manner alleged."

While the foregoing instruction does imply that contributory negligence on the part of plaintiff would preclude recovery against the defendant for personal injuries, it does not specifically direct that such would be its effect, and when its sufficiency in this respect is gauged in the light of specific instructions relative to the legal effect of defendant's negligence, it is clearly inadequate. Thus, in instruction No. 9 the jury was told that if the jury should find from the evidence that

"the plaintiff was negligent in failing to see and observe the defendant, but you shall find further from the evidence that the defendant saw plaintiff at or near the intersection when he was a sufficient distance away to have slowed down or stopped and thus have avoided the accident, then you are instructed that it was the duty of the defendant to slow down or stop to avoid the accident, and his failure to do so would make him liable and your verdict should be in favor of the plaintiff and against the defendant."

Such instruction, unelucidated in any other part of the charge, might well be construed by the jury to mean that though the jury found negligence on the part of plaintiff which proximately contributed to the accident, nevertheless plaintiff was entitled to a verdict.

Viewing the instructions as a whole, we conclude that the court failed, although requested by defendant to do so, to advise the jury as to the effect of alleged negligent on the part of plaintiff should it find that such negligence proximately contributed to her own injuries. This was prejudicial error.

Furthermore, viewing the quoted instruction from the standpoint of the burden of care it imposed on defendant, it is erroneous. Thereby liability was fastened upon defendant if he saw the plaintiff at or near the intersection when he was a sufficient distance away to have slowed down and stopped. This, regardless of the fact that it may have reasonably appeared to defendant when he first saw plaintiff's car that he, the defendant, had the right of way and that had not plaintiff increased her speed as she approached the intersection, as defendant testified she did, the vehicles would not have collided. This, of course, is not the law.

Defendant was required to use due care, both to observe the location and speed of plaintiff's car, and in acting to avoid coming in contact with it. He was not required under the state of facts testified to by defendant to have slowed down or to stop, simply because he first saw plaintiff near the intersection.

Perhaps the court by such instruction intended to instruct on the "last clear chance." If so, the court was in error. Application of such doctrine to the facts as revealed by the testimony on the part of either plaintiff or defendant is not warranted. We are mindful of the rule that an instruction must be read in the light of the whole charge in determining whether it was calculated to mislead the jury. A careful examination of the whole charge convinces us that the misleading effect of instruction No. 9 was not erased by the import of the instructions as a whole.

It follows that the judgment must be reversed and the case remanded for a new trial. We therefore note another contention of appellant. He argues that plaintiff was not entitled to recover for loss of wages during the time she was disabled for the reason she was paid by her employer for those particular days. The undisputed evidence is that she obtained the compensation by drawing on her accumulated sick leave. In view of the fact that she lost the benefit of such sick leave for future needs, under the facts of this case the court did not misdirect the jury

on the issue of loss of income during the period she was unable to work.

The judgment is reversed and the cause is remanded to the district court for a new trial. Costs to appellant.

PRATT, WADE, WOLFE and LATIMER, JJ., concur.