James Lewis Biddle, *an infant, etc.*

*v.*

William H. Haddix
AND State Farm Mutual Automobile Insurance Company

(No. 13004)

Submitted January 26, 1971.    Decided February 23, 1971.

*Herschel Rose, James D. Nash, Jr.,* for appellant.

*R. Michael Tatterson,* for appellees.

CALHOUN, JUDGE:

This case, on appeal from a final judgment of the Circuit Court of Marion County, involves a civil action for recovery of damages for personal injuries sustained on December 31,

1967, by James Lewis Biddle, an infant, when he was struck by a panel truck owned and operated by William H. Haddix, the defendant, on a secondary public road in Marion County. James Lewis Biddle will be referred to in this opinion as the plaintiff.

The jury trial, held in early December, 1969, resulted in a verdict for $500 in favor of the plaintiff. From a judgment entered on that verdict, the plaintiff has been granted the appeal to this Court. Subsequently he was granted leave to move to reverse the judgment of the trial court. In these circumstances, the case was submitted for decision upon the original record and upon typewritten briefs and oral argument of counsel for the respective parties.

The defendant paid to the parents of the plaintiff the sum of $1,386, representing the amount of hospital and medical bills incurred in the treatment of the plaintiff, and this fact appeared without objection as a part of the testimony before the jury.

The case was submitted to the jury for decision on the issues of the primary negligence of the defendant, the contributory negligence of the plaintiff, and the amount of damages, if any, which the plaintiff was entitled to recover.

The assignments of error asserted in behalf of the plaintiff in his petition for an appeal are as follows:

1. The trial court erred in overruling the plaintiff's motion to set aside the verdict and judgment and to award the plaintiff a new trial on the single issue of damages in accordance with the provisions of Rule 59(a), R.C.P.

2. The trial court erred in overruling the plaintiff's motion to set aside the verdict and judgment and to award him a new trial on all issues.

3. The trial court erred in refusing to sustain the motion of the plaintiff for a mistrial on the ground that the defendant, while testifying as a witness in the presence of the jury, made a statement which indicated that he was not covered by liability

insurance which would afford him protection against the claim of the plaintiff.

4. The trial court erred in giving and in reading to the jury two instructions tendered in behalf of the defendant. This objection was not seriously relied upon in this Court and apparently has been deliberately abandoned.

In his brief, counsel for the plaintiff asserts additionally that the trial court erred in not directing a verdict in favor of the plaintiff on the single issue of liability.

We are of the opinion that, from all the evidence, the question of the defendant's liability, involving the issue of the defendant's primary negligence as the proximate cause of the accident, and involving the issue of the plaintiff's contributory negligence, presented a proper case for the jury.

William H. Haddix, the defendant, called by the plaintiff as an adverse witness, testified that, on the day in question, he left his home about six o'clock in the evening alone in his panel truck in order to go to a certain store located approximately five miles from his home for the purpose of making certain purchases; that the accident occurred during the course of his return to his home; that his travel to and from the store required about thirty minutes "each way"; that he remained at the store about fifteen or twenty minutes; that, during the course of the return trip, he "picked up" a neighbor named Russell Goodwin who continued as a passenger in the defendant's truck to the scene of the accident; that, at the time of the accident, it was snowing and that, as a consequence, the road was covered with snow one-half to three-fourths of an inch in depth; that the road had been "plowed two or three times" previously with the result that nine or ten inches of snow was piled on each side of the road; that the road from the defendant's home to and from the store "was slick all the way through", and that, when he left home to go to the store, he "knew the road was slippery"; that the headlights of his truck were lighted as he approached the scene of the accident; that the falling snow did not impair or lessen visibility; that he could "probably see 100 feet, more or less"

ahead of his truck; that when he arrived at a certain point in the highway, he saw two children in the road about forty feet ahead of his truck, who, according to the undisputed evidence, were Jo Ann Biddle and Eugene Biddle, brother and sister, and cousins of the plaintiff, the three having been "sled riding" on the road in the area where the accident occurred immediately prior to the time of the occurrence of the accident.

The defendant testified further that, when he first saw the two Biddle children, they were more or less to the defendant's right-hand side on the "plowed portion" of the road; that, when he first saw the two children, he "shoved the brake instantly", whereupon the rear end of his truck "slid more or less to the left"; and that thereupon the front end of the truck went across the snow bank on the right side of the road.

It is undisputed that the effect of the impact was to pin the defendant, in a fallen position, against the end of a culvert which was placed under a private driveway leading to a nearby home. The truck came to rest with one of the front wheels on the plaintiff's right leg. At the request of the children, the defendant backed his vehicle so as to free the plaintiff's leg. The defendant testified further that his truck proceeded approximately twenty feet "through the piled-up snow" before it struck the plaintiff and came to rest. When asked whether the accident resulted from his fault, the defendant replied: "I was driving the vehicle, so I guess you'd have to say it was mine, that's about the only thing I can say."

The three Biddle children testified in behalf of the plaintiff. Their testimony, concerning the circumstances under which the accident occurred, was substantially the same as that of the defendant.

Jo Ann Biddle testified that "it wasn't dark yet" at the time the accident occurred; that the three children were on the right-hand side of the "plowed" portion of the road and that, when they saw the defendant's truck approaching, they

hurried farther to the right "off the road" and "over the snow pile." In that connection, she further testified: "* * * he was coming right toward us, so we took off running. * * *. When we seen he'd hit Jimmy, we was off the road, and that's all." She testified that the "plowed portion" of the road was of sufficient width "for two cars to pass."

Eugene Biddle testified substantially to the same effect as his sister, Jo Ann. When asked what the plaintiff did as "the truck came through the snow bank," he replied that the plaintiff fell, that he got up and turned around to see where the truck was and at that time the truck struck the plaintiff and pinned him against the culvert. He testified that, after the truck backed off the plaintiff's leg, the plaintiff got out of the ditch and tried to stand up but that he fell again; that the father of the Biddle sister and brother was summoned to the scene, that he arrived "a couple minutes" later and that the plaintiff then "was still laying right beside the ditch."

James Lewis Biddle, the plaintiff, testified that he was sixteen years of age at the time of the trial; that the defendant's truck "went sideways" as it approached; that he and the two other children were then "in the deeper snow on the side" of the "plowed portion" of the highway and that they proceeded "over into the deep snow"; that he turned around and fell, and "by the time I got back up again, he had me against the culvert"; that he "fell in the ditch" near the culvert; and that he tried to get up and walk after he was struck but he was unable to do so and again fell. The evidence is undisputed that the plaintiff was still lying on the ground when the father of the plaintiff's two cousins came to the scene, picked up the plaintiff and took him to a nearby home of people named Conner.

Russell Goodwin, a witness for the defendant, testified that he traveled with the defendant as a passenger in his truck for a distance of about a quarter of a mile before arriving at the scene of the accident. In answer to a question concerning the "weather conditions", he made the following reply: "It was pretty snowy. There was about six or eight inches on in the fields and the road was in bad shape. It had been scraped

there and there was anywhere from twenty-four to thirty inches piled up on the side of the road." He further testified that the truck, as it approached the scene of the accident, was proceeding at a speed of from ten to twenty miles an hour. Apparently he testified that the truck was proceeding on a slight downward grade as it approached the scene of the accident. He testified that it was then "dark or getting dark" but that even without the aid of the truck's headlights, "you could see pretty good"; and that he did not see the three "youngsters" until after the accident.

The defendant testified that he saw the plaintiff's two cousins proceeding ahead of him more or less to the right side of the road, whereupon he immediately applied his brakes, as a consequence of which the truck "skidded to the left and threw the front end to the right." He testified that he did not see the plaintiff until immediately before the truck struck him.

Certain very pertinent facts in this case are not disputed in any material or substantial respect. The defendant was fully aware of the treacherous condition of the road in question when he commenced his journey to the store. He had traveled over the road in the area of the scene of the accident a short while before during the course of his going to the store. He applied his brakes or otherwise operated his truck in such a manner that he lost control of it, with the result that the truck completely left the highway, went through the bank of snow along the side of the road and struck the plaintiff at or near the ditch on the defendant's right side of the road. The defendant had not seen the plaintiff until immediately before the impact and, therefore, the plaintiff himself could not be charged with any fault which in any degree could have been a cause of the defendant's having lost control of his truck.

This Court has repeatedly held that where the evidence is conflicting, turning on the credibility of witnesses, or where the evidence, though undisputed, is such that reasonable men may properly draw different conclusions from it, questions of primary negligence, due care, proximate cause and contributory negligence are proper questions for jury determination.

*Poe v. Pittman,* 150 W.Va. 179, 144 S.E.2d 671. We are of the opinion and accordingly the Court holds that the jury's determination of the defendant's liability is fully justified by the evidence; we cannot say that such finding is unjustified or clearly wrong; and accordingly the verdict of the jury on the question of the defendant's liability is affirmed.

Shortly after the accident, the plaintiff was taken to the emergency room of the Fairmont General Hospital, at Fairmont, West Virginia, where, at about seven-thirty in the evening of that day, he was examined by and placed under the care of Dr. Joseph D. Romino, who is engaged in the practice of surgery and medicine. There is no dispute concerning the nature and extent of the plaintiff's injuries.

Dr. Romino testified that, when the plaintiff arrived at the hospital, his pain was so severe that he had blood pressure readings which reached one hundred sixty and one hundred seventy and that consequently the plaintiff "needed quite a bit of Demerol, things of that nature." An examination disclosed that the plaintiff had sustained severe injuries to his right leg, including a crushed or comminuted fracture of the tibia; a broken fibula; a severe "cut" or wound covering four to five inches in diameter on the posterior of the leg below the knee; and two wounds on the anterior portion of the leg below the knee. The cut or the wound on the rear portion of the leg was so severe and extensive that it was impossible to use a cast in reducing the fractures. In these circumstances, his leg was put in traction in order to keep the bones in line. In treating the injuries and in order properly to align the leg, it was necessary to administer a general anesthetic. Thereafter the plaintiff was placed in a bed on the flat of his back. While in that position twenty-four hours a day, it was necessary to place a sandbag on each side of the leg in order to stabilize his leg.

The plaintiff was discharged from the hospital on or about February 9, 1968, after having spent between five and six weeks in bed on the flat of his back. During that period, his pain was such as to require additional medication to alleviate it. Thereafter he was permitted to go to his home where he

was required to use a wheelchair for about a month. During that period, it was necessary for his mother to bathe him and also, as frequently as two or three times a day, to dress the wound on the back of his leg. After the plaintiff discontinued use of the wheelchair, he was required to use two crutches. In April, 1968, the plaintiff, still using crutches, was able again to ride the school bus in order to resume his role as a student. Thereafter he used one crutch until June 11, 1968.

Dr. Romino testified at the trial that the plaintiff has a considerable scar on the rear of his leg and that on the front of his leg there is a protrusion which appears to be a fascial hernia. The doctor further testified that eventually it will be necessary to repair the fascial hernia by a surgical process which will probably require hospitalization for a week and a surgical bill which will probably be $150.00. Colored photographs, reflecting the scar and the fascial hernia, were introduced in evidence. The injured leg was exposed and exhibited to the jury. Dr. Romino testified that, as a consequence of the injuries, the plaintiff is limited, "maybe at least 10 to 15%", in his ability to perform manual labor and that the injuries are permanent in this respect.

Dr. R. J. Sidow, an orthopedic surgeon of Fairmont, examined the plaintiff before the trial. In that connection, he had the benefit of X-rays made under the direction of Dr. Romino and additional X-rays of the plaintiff's leg made under Dr. Sidow's direction. The testimony of Dr. Sidow substantiated and perhaps even supplemented the testimony of Dr. Romino concerning the nature and degree of the injuries sustained by the plaintiff. He testified that the plaintiff's injuries are, to a considerable extent, permanent in nature.

We are of the opinion that the issue of liability and the issue of the extent and the nature of the plaintiff's damages resulting from his personal injuries are clearly separable and that this is a case in which the plaintiff is entitled to a new trial on the single issue of damages. R.C.P. 59(a); *Hall v. Groves,* 151 W.Va. 449, pt. 1 syl., 153 S.E.2d 165; *Richmond v. Campbell,* 148 W.Va. 595, pt. 4 syl., 136 S.E.2d 877.

In an action for recovery of damages for personal injuries, the amount which the plaintiff is entitled to recover being indeterminate in character, this Court ordinarily will not set aside the verdict of the jury on the ground that it is excessive or on the ground that it is inadequate in amount, *unless the verdict in that respect is not supported by the evidence* or is such that the amount thereof indicates that the jury was influenced by passion, partiality, prejudice or corruption or entertained a mistaken view of the case." (Italics supplied.) *Sargent v. Malcomb,* 150 W.Va. 393, syl., 146 S.E.2d 561. This rule applies with peculiar force to the extent that the verdict is for pain and suffering resulting to the plaintiff from his personal injuries. *Richmond v. Campbell,* 148 W.Va. 595, pt. 2 syl., 136 S.E.2d 877; *Landau v. Farr,* 104 W.Va. 445, pt. 2 syl., 140 S.E. 141. On the other hand, it is well-settled that a verdict in a personal injury action in an amount materially less than the evidence shows the plaintiff is entitled to recover will be set aside as inadequate. *Hall v. Groves,* 151 W. Va. 449, pt. 2 syl., 153 S.E.2d 165; 5 M.J., *Damages,* Section 56, page 547.

In the light of the undisputed evidence concerning the nature of the plaintiff's injuries; the consequent pain, suffering and discomfort; the long period of his hospitalization while in bed on the flat of his back; the time he was confined to his home in a wheelchair; the time he was required to use two crutches and later one crutch; the fact that he was required to be absent from school for approximately four and one-half months; and in the light of the undisputed fact that the plaintiff has sustained injuries which are permanent in character, we are of the opinion that the verdict for $500 is inadequate in amount and in that respect not supported by any reasonable view of the evidence. The verdict in this respect is therefore set aside and the plaintiff is awarded a new trial on the single issue of the amount of damages he is entitled to recover for his personal injuries.

While the defendant was testifying as an adverse witness, counsel for the plaintiff asked him whether, immediately following the accident, he stated that the accident was his fault. He made the following unresponsive reply: "I didn't have no insurance on the vehicle, so, evidently, it had to be my fault

and I would be responsible for it." No objection was made by counsel for either party to the answer at the time it was made and neither moved the court at any time to direct the jury to disregard the defendant's reference to insurance. No cross-assignment of error has been made in behalf of the defendant. After the defendant completed his testimony as an adverse witness, counsel for the plaintiff made a motion for a mistrial on the ground of the defendant's reference to insurance. The motion was overruled.

In the light of the Court's decision previously stated herein, we are of the opinion that it is unnecessary to decide whether the trial court committed reversible error in refusing to grant a mistrial. Assignments of error made in this Court in behalf of the plaintiff have been made alternatively. In the light of our decision to sustain the jury's verdict on the issue of liability and to remand the case for a new trial on the single issue of damages, it is obvious that counsel for the plaintiff, in such circumstances, does not want the case reversed and a new trial awarded on all issues merely on the basis of an alleged reversible error committed by the trial court during the course of the trial.

For reasons stated in this opinion, the judgment of the Circuit Court of Marion County is affirmed in its action in refusing to award a new trial on the issue of the defendant's liability; the judgment is reversed to the extent that the trial court refused to award a new trial on the single issue of damages; and the case is remanded to the Circuit Court of Marion County with directions to award the plaintiff a new trial on the single issue of damages. Accordingly, the motion to reverse is sustained in part and overruled in part.

> *Affirmed in part;*
> *reversed in part;*
> *remanded for new*
> *trial on issue*
> *of damages.*