REGINA SIMMONS, *an infant, etc.*

*v.*

THE CITY OF BLUEFIELD, *etc.*

(No. 13557)

Decided November 18, 1975.

Rehearing Denied March 26, 1976.

*David Burton* for appellant.

*Fred O. Blue* for appellee.

BERRY, JUSTICE:

This is an appeal by Regina Simmons, an infant, by Acie L. Simmons her guardian, and by Acie L. Simmons and Georgia Simmons, the parents of Regina Simmons, from a final judgment of the Circuit Court of Mercer County in their favor and against the City of Bluefield.

This action was instituted on behalf of Regina Simmons, an infant, by her guardian, against the City of Bluefield for damages for personal injuries suffered by the infant as a result of an explosion from a fire which had been started and supervised by an employee of the City of Bluefield at a public playground maintained and operated by the City. In addition, special damages for hospital and medical expenses were sought by the infant's father, Acie L. Simmons, and by her mother, Georgia Simmons. The jury returned a verdict in the amount of $3,500.00 for the infant plaintiff and $507.90 for her parents. Following the entry of a judgment order on the jury's verdict, the appellants moved the court to set aside the verdict and to grant them a new trial on the issue of damages only, contending that the award was inadequate and that the court had improperly excluded from the jury's consideration certain evidence relating to future medical expenses. The Circuit Court denied the motion for a new trial and entered final judgments for the plaintiffs in accordance with the verdict of the jury.

On the afternoon of July 7, 1971, the appellant, Regina Simmons, then nine years of age, went to play at the Hardy Street playground, a public facility operated and maintained by the appellee, the City of Bluefield. The playground was supervised by Mrs. Constance Pannell, an employee of the City, whose responsibilities included looking after the children who used the playground facilities, teaching and instructing the children in games and other activities and conducting marshmallow and wiener roasts. Shortly after Regina Simmons arrived at the playground, it was decided that Mrs. Pannell would hold a marshmallow roast for the benefit and enjoyment of the children playing there. In preparation for building a fire, Regina and Mrs. Pannell cleared the area used earlier that day as a fireplace. Although it appeared that there was some debris including broken glass, bottles and other trash scattered around the playground and that there was a refuse pit situated a few feet from the proposed location of the fire which contained bottles, cans and other rubbish collected from the playground,

no bottles or cans were observed in the immediate vicinity of the fire site.

Following the preliminary preparation, the infant plaintiff and the playground supervisor gathered up cardboard, newspapers and twigs to be burned in the fire. Mrs. Pannell lit the fire and the children were assembled and each given marshmallows for roasting. While the children were roasting their marshmallows, Mrs. Pannell heard a "hissing noise" which she attributed to either the marshmallows cooking or the twigs burning the fire. After all of the children had roasted two marshmallows apiece, Mrs. Pannell distributed a third to each and, having done this, returned her attention to the activities around the fire. At this point, Mrs. Pannell heard Tyrone Buchanan, another child present in the area of the fire, shout "something's going to blow, something's going to blow," and within seconds the fire exploded throwing hot and burning material on Regina Simmons, Mrs. Pannell, and other persons there.

The City, as an aspect of its contest of liability, introduced numerous prior statements of Regina Simmons that she had observed Tyrone Buchanan throw a can in the fire before the explosion. At the trial, the infant plaintiff testified that she did not actually see Tyrone Buchanan throw the can into the fire but that she had seen him previously with a can and assumed that he had put it in the fire. Tyrone Buchanan said that he had seen a can near the fire but had not thrown it in the fire.

As a result of the explosion, Regina Simmons sustained first, second and third degree burns over the entire length of her right arm from the shoulder to her fingers, on two areas of her back, and on her face and neck. On the day of the accident, the infant plaintiff was treated as an out-patient at the Bluefield Sanitarium and released. However, because of the severity of her burns she was readmitted to hospitalization on the following day and her treatment continued in the hospital for six days. After treatment and healing, the infant

plaintiff suffered no functional limitation but was substantially scarred over her right arm and on portions of her back.

The plaintiffs, in support of their allegation that the negligence of the agent of the City proximately caused the injuries to Regina Simmons, introduced a copy of Article 31, section 1 of the Municipal Code of the City. That ordinance reads, in relevant part:

> "No person shall ignite, burn, or set fire to any leaves, debris, garbage or rubbish on any street or sidewalk area. It shall be unlawful to ignite or burn such materials at any other place without properly safeguarding the same so that said fire will not cause damage ... to any person ...."

This ordinance was admitted in evidence and read to the jury over the objection of counsel for the City.

The amount of special damages representing the actual medical expenses incurred by the parents of Regina Simmons was stipulated at $507.90. However, a substantial controversy arose over whether there could be a recovery for future plastic reconstructive surgery and this question is the central issue raised by the appellants before this Court.

The appellants introduced the medical report of Dr. Clyde Litton, a specialist in the field of plastic surgery. Dr. Litton's report described the soft tissue injuries suffered by Regina Simmons and stated that he would recommend that she be given the benefit of plastic reconstructive surgery for the right upper extremity consisting of six to eight split thickness skin grafting sessions in which the skin would have to be taken from another part of the body to graft to the burned area. This treatment would necessitate multiple hospitalizations of approximately a week or ten days each and the procedures would have to be done under general anesthesia with the usual pain and suffering associated with such operations. He stated the professional fee would be approximately $600.00 for each operation.

The appellee introduced the report of Dr. Henry T. Brobst, a plastic surgeon from Roanoke, Virginia, in which he stated that he had reviewed Dr. Litton's report and that he agreed completely with it except that he questioned whether such surgery was actually warranted since it would entail a long period of hospitalization and immobilization of the plaintiff. He stated that no functional disability appeared at the time of his examination but with the rapid growth of the child that some surgery might be required in the future. He estimated the cost of the surgery recommended by Dr. Litton to be in the neighborhood of $800.00 or $1,000.00 for each operation, contingent on how much actual surgery was to be done.

Dr. James Phillips Thomas, a general surgeon with particular expertise in cardiovascular surgery and experience in the treatment of burns, testified on behalf of the City with regard to his examination of Regina Simmons. He stated that his examination showed no functional limitation at the time of the examination but that such disability could occur as the infant plaintiff continued to grow. Based on his findings, he did not recommend future plastic surgery at the time of the trial although he could not state with certainty that such treatment would not be required at some later time. He testified that the process of reconstructive surgery to treat scars actually results in some scarring and visible deformity and, for this reason, it was his opinion that plastic surgery would not produce a significant cosmetic improvement. However, he stated that he did not disagree with the opinions of Dr. Litton and Dr. Brobst relative to the benefits of plastic surgery for the plaintiff and that the decision concerning such surgery would have to be made by the plaintiff and a plastic surgeon of her choice. Dr. Thomas also testified in his opinion that the cost estimates of Dr. Litton and Dr. Brobst for future surgery were conservative.

At the conclusion of all the evidence, on motion of counsel for the City the trial court ruled that the evidence relating to future medical expenses for plastic

surgery was speculative and should not be considered by the jury. In addition, the trial court refused to give an instruction offered by the plaintiffs which would have permitted the jury to consider all future medical expenses in awarding damages. The instruction offered by the plaintiffs was amended by the court to exclude from the jury's consideration any future expenses relating to plastic surgery for cosmetic purposes.

Although the appellants specify several errors relied upon in this appeal, all, save one, which we will treat at the conclusion of this opinion, relate to the refusal of the trial court to allow, plaintiffs to recover the cost of future plastic reconstructive surgery as an element of damages.

Before we can reach the merits of the appellants' challenge to the judgment, it is necessary to give initial consideration to some procedural and substantive matters raised by the filing of cross-assignments of error by the appellee. In its brief, submitted to this Court on August 20, 1975, the City of Bluefield cross-assigned three aspects of the trial below as error: (1) that the trial court erred in denying the appellee's motion for a directed verdict on the ground that the plaintiffs failed to prove that the injuries suffered by Regina Simmons were the proximate result of the negligence of the City, (2) that the trial court erred in denying the appellee's motion for a directed verdict on the ground that the appellants had failed to furnish the City with a written, verified notice of the accident within thirty days of its occurrence, and (3) that the trial court erred in permitting the introduction of the city ordinance relating to the making and maintaining of fires within the city limits of Bluefield.

In response to these cross-assignments by the appellee, the appellants point out that although a motion was made on behalf of the City of Bluefield for a directed verdict at the conclusion of the evidence, the City did not within ten days after the entry of judgment move to have the verdict and the judgment entered thereon set

aside and to have judgment entered in accordance with the motion for a directed verdict as required by Rule 50(b) of the West Virginia Rules of Civil Procedure. The appellants argue that the appellee cannot cross-assign error in this Court with regard to the failure of the trial court to direct a verdict in its favor without having previously complied with the provisions of Rule 50(b).

A motion for judgment notwithstanding the verdict is not a condition precedent to an appeal from a final judgment. 5A Moore, *Federal Practice* ¶50.16 (2d ed. 1975); 9 Wright & Miller, *Federal Practice and Procedure:* Civil § 2540 (1971). We see no cogent reason for applying a different standard to a cross-assignment of error by an appellee as opposed to an assignment of error by an appellant. Of course, under Rule 50(b), in the absence of motions for directed verdict and for judgment under the rule, seasonably made in the trial court, this Court will not direct the entry of judgment for a complaining party. *Chambers v. Smith,* ____ W. Va. ____, 198 S.E.2d 806 (1973); *Steptoe v. Mason,* 153 W. Va. 783, 172 S.E.2d 587 (1970); *Cone v. West Virginia Pulp and Paper Company,* 330 U.S. 212, 91 L.Ed. 849, 67 S.Ct. 752 (1947). *See also,* Lugar & Silverstein, W. Va. Rules, pp. 380–381 (1960), and Annot., 69 ALR2d 449 (1960), at §17(c), pp. 493–496. Thus, the effect of a party's failure to make motions under rule 50(b) is not to preclude an appeal absolutely but rather to limit the scope of the appeal and the relief which may be granted to an appellant or cross-appellant. 9 Wright & Miller, *Federal Practice and Procedure, supra.* In the present case, even though the appellee may not be entitled to an order of this Court directing judgment in its favor in the event that the cross-assignments of error should be meritorious, we may examine those assignments to determine whether errors against the appellee restrict or limit the relief, if any, which would be granted the appellants if their attack on the judgment is successful here. *See, e.g., Montgomery Ward and Company v. Duncan,* 311 U.S. 243, 85 L.Ed. 147, 61 S.Ct. 189 (1940).

With reference to the particular cross-assignments of error by the appellee, we find that none has merit. First, the appellee challenges the evidentiary foundation upon which the appellants' allegation of negligence was based. This Court has repeatedly held that where the evidence is conflicting, turning on the credibility of witnesses, or where the evidence, though undisputed, is such that reasonable men may properly draw different conclusions from it, questions of primary negligence, due care, proximate cause and contributory negligence are proper questions for jury determination. *Biddle v. Haddix*, 154 W. Va. 748, 179 S.E.2d 215 (1971); *Poe v. Pittman*, 150 W. Va. 179, 144 S.E.2d 671 (1965). There is more than adequate evidence in the record upon which the jury could have found that the City, by its agent, was negligent and that the City's negligence was the proximate cause of the injuries to the infant plaintiff. Accordingly, we will not disturb the jury's finding on liability.

In a related vein, we are of the opinion that it was not error for the trial court to permit the introduction of the city ordinance making it unlawful to start a fire at any place in the city without properly safeguarding the fire in order that it not cause injury to any person. This ordinance does little more than codify the duty imposed upon one who builds and maintains a fire. Although the violation of a municipal ordinance creates a prima facie case of negligence, the determination as to whether there was in fact a violation and whether the violation was the proximate cause of the injury is within the province of the jury. *Cross v. Noland*, ____ W. Va. ____, 190 S.E.2d 18 (1972); *Payne v. Kinder*, 147 W. Va. 352, 127 S.E.2d 726 (1962); *Costello v. City of Wheeling*, 145 W. Va. 455, 117 S.E.2d 513 (1960).

The remaining cross-assignment by the appellee, that the plaintiffs failed to give a proper notice to the City as required by statute, is not well taken. The evidence is uncontradicted that a timely notice was filed with the proper city authority by the then attorney for the plaintiffs. The notice, although signed by the attorney, was

not technically verified. The statute in question, *Code,* 8-12-20, *as amended,* provides in part:

> "Notwithstanding any other provision of this Code or any charter provision to the contrary, no action shall be maintained against any municipality for injury to any person or property or for wrongful death alleged to have been sustained by reason of the negligence of the municipality, or of any officer, agent or employee thereof, unless a written verified statement by the claimant, his agent, attorney or representative of the nature of the claim and of the time and place at which the injury is alleged to have occurred or been received shall have been filed with the mayor, recorder or municipal attorney within thirty days after such cause of action shall have accrued."

We have held that compliance with such a notice requirement is a condition precedent to the right of a claimant to sue a municipality. *Thomas v. South Charleston,* 148 W. Va. 577, 136 S.E.2d 788 (1964); *Thompson v. City of Charleston,* 118 W. Va. 391, 191 S.E. 547 (1937). However, this Court has never specifically stated that strict compliance with the provisions of the statute is required. In our recent decision in *Higginbotham v. City of Charleston,* _____ W. Va. _____, 204 S.E.2d 1 (1974), we held, *inter alia,* that substantial compliance with the notice requirement is sufficient if the city is thereby afforded a full, timely and complete opportunity to investigate all of the circumstances surrounding the injury and to formulate its defense. We are therefore of the opinion that the notice filed with the City of Bluefield constituted substantial compliance with the statute and that the trial court did not commit error in holding the notice proper.

Having disposed of these preliminary matters, we now turn to the substantive question raised by the appellants, that is, whether the court erred in refusing to submit to the jury the question of compensation for future medical and hospital expenses and for pain and

suffering related to plastic reconstructive surgery. It has long been established in this State that a party may recover the cost of reasonable and necessary medical and hospital services and for future pain and suffering where the evidence shows that it is reasonably certain that such future expenses will be incurred and are proximately related to the negligence of the defendant. *Jordan v. Bero*, ___ W. Va. ___, 210 S.E.2d 618 (1974); *Shreve v. Faris*, 144 W. Va. 819, 111 S.E.2d 169 (1959); *Carrico v. W. Va. Cent. & P. Ry. Co.*, 39 W. Va. 86, 19 S.E. 571 (1894). With respect to the specific question of recovery for future medical expenses related to cosmetic plastic surgery, we agree that "the cost of plastic surgery ... [in an attempt to correct disfigurement] is just as much a medical expense as orthopedic surgery in grafting, setting or uniting broken bones," *Roland v. Murray*, 239 S.W.2d 967 (Ky. 1951), and we have previously held that upon proper proof, a party may recover the reasonable cost of anticipated cosmetic plastic surgery. *Long v. City of Weirton*, ___ W. Va. ___, 214 S.E.2d 832 (1975); *Hall v. Groves*, 151 W. Va. 449, 153 S.E.2d 165 (1967). It should be noted parenthetically, that a plaintiff is not entitled to recover for both permanent disfigurement and the expense of correcting the disfigurement. *Wilson v. Yellow Cab Co.*, 64 So.2d 463 (La. App. 1953). An examination of the totality of the medical evidence presented in the trial court below shows that there was an adequate showing of necessity, reasonableness and causation to permit the jury to consider an award for future medical expenses related to cosmetic plastic surgery and the anticipated pain and suffering relating thereto. We therefore conclude that the trial court erred in refusing to permit this question to go to the jury.

Following the entry of judgment in the trial court, the plaintiffs moved for a new trial limited solely to a redetermination of damages, which motion was denied by the trial court. It is necessary then, that this Court decide whether we should limit the scope of retrial on remand.

Although the general rule is that a new trial, when granted, is awarded for the entire case, in several cases prior to the adoption of the West Virginia Rules of Civil Procedure, it was held that a new trial may be limited to a separate and distinct issue. *E.g., Chafin v. Norfolk & Western Railroad Co.*, 80 W. Va. 703, 93 S.E. 822 (1917); *Moss v. Campbell Creek Railroad Co.*, 75 W. Va. 62, 83 S.E. 721 (1914). Since the adoption of the Rules, we have held in several instances that Rule 59(a) permits the award of a new trial on the single issue of damages where liability is established and where the extent and nature of the damages resulting from personal injuries are clearly separate and distinct from the issue of liability. *Biddle v. Haddix, supra; England v. Shufflebarger*, 152 W. Va. 662, 166 S.E.2d 126 (1969); *Richmond v. Campbell*, 148 W. Va. 595, 136 S.E.2d 877 (1964).

In the present case, the issue of liability has been resolved by the jury in finding a verdict in favor of the plaintiffs and we have said that we will not disturb this finding. Our holding that it was reversible error for the trial court to refuse to allow the jury to consider the future cost of plastic surgery relates solely to the issue of damages. Under the evidence disclosed by the record, liability and damages are separate and distinct issues. Therefore, there is no need to resubmit the question of liability to the jury and the trial court should have granted the motion of the plaintiffs for a new trial limited to development of facts relating to the necessity for plastic surgery, and the scope and quantum of damages.

Finally, the appellants have assigned an independent ground for reversal, that the court erred in failing to set aside the verdict awarded to the plaintiffs as being inadequate and insufficient as a matter of law and fact. We find it unnecessary for the disposition of this case to decide this point inasmuch as we have ruled that the appellants are entitled to a new trial on the issue of damages. On retrial, the jury will be permitted to weigh all aspects of the evidence relating to damages, including the necessity for plastic surgery for cosmetic purposes and the cost of surgically correcting the disfigure-

ment, and it may return a greater or lesser award. Therefore, the adequacy of damages is not involved in the disposition of this case in its present posture before this Court.

For the reasons stated in this opinion, the judgment of the Circuit Court of Mercer County is reversed and the case is remanded to that Court with the instruction to grant a new trial to the appellants on the single issue of damages.

*Reversed and remanded with directions.*