RICHARD LEE ELLARD, *et al.*

*v.*

IMOGENE FAY HARVEY, *et al.*

(No. 13613)

Decided November 30, 1976.

*Walter W. Burton, Wade H. Ballard, III* for appellants.

*McDougle, Davis, Handlan & Davis, Joseph M. Handlan* for appellees.

BERRY, CHIEF JUSTICE:

This is an appeal by Richard Lee Ellard, Anna Catherine Ellard and Kathy Ann Ellard, who were plaintiffs in an action instituted in the Circuit Court of Jackson County to recover damages for personal injuries. The verdict of the jury and the judgment entered thereon were in favor of the plaintiffs and are attacked by them on the ground that the amount of damages awarded was inadequate.

On June 24, 1972, Richard Ellard, his wife, Anna Catherine Ellard, and their daughter, Kathy Ann Ellard, sustained personal injuries when a truck driven by Mr. Ellard, in which his wife and daughter were riding, was struck by an automobile operated by Mrs. Imogene Fay Harvey. The accident occurred on State Route 3 in Raleigh County, West Virginia, when the automobile driven

by Mrs. Harvey skidded off on the berm on a curve and then skidded across the road and struck the Ellard truck which was approaching the Harvey automobile from the opposite direction. As a consequence of the collision, the Ellards instituted a civil action in the Circuit Court of Jackson County against the defendants, Imogene Fay Harvey and Raymond Harvey, based on the alleged negligence of Mrs. Harvey. After the evidence was concluded at the trial, the circuit court directed a verdict in favor of the plaintiffs on the issue of liability, leaving only the question of the amount of damages for the jury to determine.

As a result of the accident, Richard Ellard suffered a laceration of his scalp approximately four inches in length and was diagnosed as having sustained a cerebral concussion. In addition, his injuries included a fractured rib and bruises to his chest and back. Mr. Ellard was hospitalized for a period of six days. Because of his injuries, Mr. Ellard was unable to work for approximately five weeks. During that period, he received sick leave benefits of $2,000, apparently the equivalent of his normal salary. Mr. Ellard claimed damages for his own injuries, pain and suffering, loss of earnings and for the medical and hospital expenses which he incurred by virtue of his injuries and those to his wife and daughter. Total hospital and medical expenses were stipulated at $4,500.

Mrs. Anna Catherine Ellard sustained a traumatic injury to her left kidney and left lung. In addition, she received a concussion and was bruised over her left chest and back. Mrs. Ellard was hospitalized for treatment as an inpatient from June 24th until July 13, 1972. On July 14, 1972, Mrs. Ellard was readmitted to the hospital suffering from thrombophlebitis of her left leg. This condition was diagnosed to be a result of having been confined to bed during recuperation from her injuries.

In addition to her physical injuries, Mrs. Ellard manifested a debilitating mental or emotional condition de-

scribed as anxiety neurosis, severe/chronic and depressive neurosis, severe/chronic, following the automobile accident. While it appears that Mrs. Ellard previously exhibited some emotional distress as a result of the loss of immediate members of her family, the medical evidence presented at trial indicated that the emotional condition was directly and proximately related to the automobile accident, which event aggravated her preexisting condition. It was the opinion of Dr. David M. Wayne, a psychiatrist called as a witness on behalf of the plaintiffs, that Mrs. Ellard's condition would be permanent in the absence of treatment. The doctor described a course of necessary treatment which included hospitalization for a period of from two to three months and out-patient therapy for six months to a year. On two occasions, counsel for the plaintiffs attempted to establish, through Dr. Wayne, the cost of future medical treatments for Mrs. Ellard. On both occasions, the court ruled the estimates by the doctor inadmissible.

Kathy Ann Ellard sustained a broken nose in the collision and was hospitalized for a brief period. The injury was painful for about four months but Miss Ellard made a complete recovery and was without pain at the time of trial.

Following its deliberation on the issue of damages, the jury returned a verdict for Richard Ellard in the amount of $5,800, which included the stipulated medical expenses of $4,500 and $1,300 for pain and suffering. As damages to Anna Catherine Ellard, the jury awarded $2,400 for pain and suffering. The plaintiff, Kathy Ann Ellard, received $100.

While the assignments of error by the appellants are related to an overall contention that the verdict of the jury was inadequate, it is not merely asserted that the amounts awarded were lower than the injuries sustained by the plaintiffs seemed to warrant. Instead, the appellants contend that the damages awarded to Mr. and Mrs. Ellard were inadequate because of adverse rulings and instructions to the jury by the court, which

deprived the claimants of all the elements of damages to which they were entitled. The assignments of error can be consolidated into three categories: (1) the court erred in not permitting medical evidence as to future medical and hospital expenses for Mrs. Ellard to be given to or considered by the jury; (2) the court erred in approving the verdict of the jury which specifically excluded an award of damages for loss of consortium; (3) the court erred in giving defendant's instructions nos. 8, 10 and 13 which limited the damages the jury was permitted to award.

## I

The first assignment of error is well taken. It is clear from the evidence that the plaintiff Anna Catherine Ellard was suffering from severe anxiety and depression at the time of the trial and that the accident proximately caused the aggravation of a pre-existing condition. Dr. Wayne, the psychiatrist who testified on behalf of the plaintiffs, stated: " ... this condition from which she is suffering was a direct result of the car accident that she had June 24, 1972 which aggravated her pre-existing condition." Dr. Wayne further testified that in the absence of any future treatment to Mrs. Ellard, her condition would be permanent. Finally, based on his previous experience, the doctor gave his best estimate concerning prospective medical and hospital costs, both during the necessary confinement in the hospital and after the plaintiff's release.

On several occasions, this Court has articulated the rule that a plaintiff may recover the cost of reasonable and necessary future medical and hospital services and for future pain and suffering where the evidence shows that it is reasonably certain that such future expenses will be incurred and are proximately related to the negligence of the defendant. *See, e.g., Simmons v. City of Bluefield,* ____ W. Va. ____, 225 S.E.2d 202 (1975); *Jordan v. Bero,* ____ W. Va. ____, 210 S.E.2d 618 (1974); *Shreve v. Faris,* 144 W. Va. 819, 111 S.E.2d 169 (1959).

The defendant contends that the evidence concerning the cost of medical treatment was not sufficient to permit the jury to consider an award for future medical expenses and that the trial court was correct in excluding such testimony from jury consideration because it did not meet the requirement of "reasonable degree of medical certainty." This Court has repeatedly held that such medical evidence must only be to a "reasonable" certainty. *Simmons v. City of Bluefield, supra; Jordan v. Bero, supra; Shreve v. Faris, supra.* In *Pygman v. Helton,* 148 W. Va. 281, 134 S.E.2d 717 (1964), it was held:

> "All that is required to render such testimony admissible and sufficient to carry it to the jury is that it should be of such character as would warrant a reasonable inference by the jury that the injury in question was caused by the negligent act or conduct of the defendant."

The psychiatrist who testified on behalf of the plaintiff stated positively that Mrs. Ellard's condition required psychiatric treatment consisting of a period of hospitalization followed by a period of out-patient therapy. He stated that in the absence of such treatment Mrs. Ellard's condition would be permanent. In addition, he indicated his familiarity with the costs of such treatment, both as to the confinement in the hospital and out-patient treatment, and that the cost would be from three to five thousand dollars.

It, therefore, clearly appears that the medical evidence concerning any future pain and suffering and medical and hospital costs related to the injuries suffered by Mrs. Ellard should not have been excluded from the jury. The relationship between the condition of the plaintiff and the negligence of the defendant as well as the necessity for future medical care was established to the requisite degree of certainty. The fact that the actual cost of future medical care could not be stated to an absolute certainty does not defeat the plaintiff's right of

recovery. It was sufficient that the projected expenses were not speculative or conjectural and were indicated within an approximate range. *Jordan v. Bero, supra.* Any ambiguity in this regard goes to the weight of the evidence rather than to its admissibility.

Defendant's instructions 10 and 13 should not have been given under the circumstances presented by the record. First, insofar as the jury was instructed on future costs, the instructions were confusing, since the trial court had excluded all evidence on the point. Second, the plaintiffs' theory of recovery for the mental condition of Mrs. Ellard was based on aggravation rather than direct causation. The instructions did not properly reflect this theory.

## II

The appellants' contention that the jury verdict should not have been received because it did not include damages for loss of consortium constitutes a second ground for reversing the judgment below. Based on the recitations of the foreman of the jury at the time the verdict was returned, it is clear the award made by the jury was only for stipulated damages and for pain and suffering and that there was no compensation for loss of consortium.

From the testimony of Mr. and Mrs. Ellard and Dr. George H. Guy, the plaintiffs' family physician, it is apparent that the ability of Mrs. Ellard to perform her normal household activities and engage in sexual intercourse with her husband was substantially impaired as a result of the injuries suffered in the automobile accident. It is well established that a husband may recover damages for loss of consortium where it is properly proved. *Shreve v. Faris, supra.* We said in the first Syllabus Point of the *Shreve* case:

> "In an action for damages, the plaintiff may recover for the loss or the impairment of the services and the society of his wife and of her capacity to engage in sexual intercourse, as ele-

ments of consortium, when it appears from the evidence that such loss or impairment results from injuries to his wife which are caused by the negligence of the defendant."

Where a verdict in a personal injury action is for an amount materially less than the evidence shows the appellant is entitled to recover or, where the verdict does not include compensation for all elements of damages which are uncontroverted or clearly shown by the evidence, it should be set aside as inadequate. *Biddle v. Haddix*, 154 W. Va. 748, 179 S.E.2d 215 (1971); *Hall v. Groves*, 151 W. Va. 449, 153 S.E.2d 165 (1967). In this regard, we said in *DeLong v. Albert*, 157 W. Va. 874, 205 S.E.2d 683 (1974):

> "Where the question of liability has been resolved in favor of the plaintiff, leaving only the issue of damages, the verdict of the jury will be set aside and a new trial granted on the single issue of damages if the jury returns a verdict for less than the damages proved at the trial."

We conclude that the failure of the jury to include, as a part of its verdict, damages for loss of consortium, constitutes a fatal flaw in the proceedings below and requires a reversal of the judgment.

## III

Finally, the appellant Richard Ellard assigns as error the giving of defendant's instruction no. 8 to the effect that there was not sufficient evidence to permit recovery for loss of wages as a result of the accident. This assignment is well taken.

It is undisputed that Mr. Ellard lost several weeks of work as a consequence of his injuries. Although he was paid his regular salary during this period, the payment was made to the plaintiff in accordance with a sick leave policy maintained by his employer. The evidence shows that prior to the accident the plaintiff had accumulated

approximately 500 hours of sick leave, of which he was required to use 200 hours while recuperating.

It is well established in most jurisdictions that one claiming damages for loss of wages is not barred from recovering on the claim merely because he was paid in accordance with a sick leave policy or similar plan while away from work. *See, e.g., Kistler v. Halsey*, 173 Colo. 540, 481 P.2d 722 (1971); *Freeman v. Reeves*, 241 Ark. 867, 410 S.W.2d 740 (1967); *D'Archangelo v. Loyer*, 125 Vt. 325, 215 A.2d 520 (1965); *Tallant Transfer Co. v. Bingham*, 216 F.2d 245 (4th Cir. 1954); *Martin v. Sheffield*, 112 Utah 478, 189 P.2d 127 (1948). This rule, commonly referred to as the "collateral source doctrine," and its rationale are described in *Kistler v. Halsey, supra:*

> "Simply stated, it [the collateral source doctrine] is that compensation or indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which he has not contributed, will not diminish the damages otherwise recoverable from the wrongdoer. We adopt what we believe to be the majority view and hold that the doctrine is applicable where the source of compensation is wages paid by an employer under an employment rule or policy providing for sick leave and accumulation thereof."

It was held in *Freeman v. Reeves, supra,* that an injured party may recover damages for lost leave, whether accumulated sick time or vacation time, for which he is paid by the employer and which he has earned through his employment. Similarly, in *D'Archangelo v. Loyer, supra,* the court held the plaintiff entitled to damages for lost wages even for those periods for which he received sick leave payments from his employer. And, in *Tallant Transfer Co. v. Bingham, supra,* the Fourth Circuit Court of Appeals forcefully stated the interests of the injured party faced by the combined loss of employment benefits and the inability to recover for lost time:

"Plaintiff had a right to his sick leave for future needs as a part of his employment. To now deprive him of these rights which he may need in the future to compensate him for some illness not occasioned by the act of a third party tortfeasor would be inconsistent with all principles of justice."

In another context, this Court has recognized and adopted the collateral source doctrine. *See, Jones v. Laird Foundation, Inc.*, 156 W. Va. 479, 195 S.E.2d 821 (1973). Under the circumstances of the instant case, we believe it appropriate to apply the rule and to permit the appellant to recover lost wages without regard to the prior receipt of sick-pay. We note in passing that a recognized alternative theory of recovery is to directly permit damages for the loss of sick-leave benefits occasioned by an injury. *Freeman v. Reeves, supra*. This approach would have been a proper one under the facts of the present case; and, in fact, an amendment suggested by the plaintiffs to their instruction no. 1 which was deleted by the trial court, embodied this theory.

The plaintiff, Richard Ellard, was entitled to have the jury instructed concerning either the loss of wages or the loss of sick-pay benefits. The failure of the trial court to afford this right deprived the plaintiff of a substantial amount of damages and was error.

There being no complaint on the part of the appellants as to the verdict and judgment in favor of Kathy Ann Ellard for the injury to her nose, the judgment of the Circuit Court of Jackson County as to her should not be disturbed. However, for the reasons stated herein, the verdict of the jury as to damages awarded to Richard Lee Ellard and Anna Catherine Ellard is set aside and the judgment entered thereon by the Circuit Court of Jackson County is reversed and a new trial as to damages is awarded to those parties.

*Verdict set aside.*
*Judgment reversed. New*
*trial granted.*

NEELY, JUSTICE, *concurring:*

I concur in the result in this case but I respectfully differ from the majority's reasoning in regard to Syllabus Point 1, which reaffirms the traditional rule that a plaintiff's recovery for future medical expenses and pain and suffering must be based on a showing, to a reasonable certainty, that such future damages will occur. I would follow the rule that a plaintiff may recover damages for future injuries in proportion to the probability of such injuries occurring. Modern improvements in probability theory and statistics justify the adoption of this new rule and overcome, to my satisfaction, the time-worn fear that damage awards based on probability would be merely speculative. A detailed analysis of my proposed rule can be found in my concurring opinion in *Jordan v. Bero,* ____ W. Va. ____, 210 S.E.2d 618 (1974), beginning at 640.

In conclusion I note the enthusiastic endorsement my proposed rule received in a case comment, 4 Hofstra L. Rev. 101 (1975). The comment carefully analyzed the logic behind the rule; established the rule's workability, in part by reference to a jury's capacity to make percentage allocations in such related tort areas as comparative negligence, aggravations of existing physical impairments, and apportionment of damages among two or more tort-feasors; and examined the practical consequences for personal injury litigation of the rule's adoption.

I am authorized to state that Justice Wilson joins in this concurring opinion.