423 S.E.2d 376

Gretchen Dascoli RAINES and Joney W. Russell, Plaintiffs Below, Appellees,

v.

Gina Kay LINDSEY and Karen Sue Lindsey, Defendants/Third–Party Plaintiffs Below, Appellants,

v.

Carson L. STIDOM, Third–Party Defendant Below, Appellee.

and

Carson L. STIDOM, Plaintiff Below, Appellee,

v.

Gina Kay LINDSEY and Karen Sue Lindsey, Defendants Below, Appellants.

No. 20844.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1992.

Decided Oct. 22, 1992.

William D. Levine, St. Clair & Levine, Huntington, for appellee Gretchen Dascoli Raines.

James A. Colburn, Baer, Colburn & Morris, L.C., Huntington, for appellee Joney W. Russell.

R. Gregory McNeer, Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, William L. Mundy, Mundy & Adkins, Huntington, for appellants Gina Kay Lindsey and Karen Sue Lindsey.

Joseph M. Farrell, Jr., Hunt, Lees, Farrell & Kessler, Huntington, for appellee Carson L. Stidom.

NEELY, Justice:

This case presents one simple issue: Did the trial court err by refusing to give a defendant's instruction on comparative contributory negligence? We find that there was sufficient evidence of contributory negligence to warrant such an instruction, and because the defendants' entire theory of the case was contributory negligence, we reverse.

This case arose out of a one-car automobile accident that occurred early on a Sunday morning in March, 1987. Gretchen Dascoli Raines and Gina Kay Lindsey arranged to spend the evening in Huntington socializing at various bars near Marshall University. Ms. Lindsey lived with her parents in Milton, so plans were made for Ms. Lindsey to spend the night with Ms. Raines in Huntington so that Ms. Lindsey could avoid driving back to Milton at the end of the evening.

Around 8:00 p.m. on the Saturday night before the Sunday morning accident, Ms. Raines met Carson L. Stidom at the Tavern–Off–The–Green, a bar located near Marshall University. Ms. Raines and Mr. Stidom drank beer and mingled with friends at the Tavern–Off–The–Green. Ms. Lindsey arrived at the Tavern–Off–The–Green at approximately ten o'clock, finding Ms. Raines and Mr. Stidom already there. While at the Tavern–Off–The–Green, Ms. Raines consumed approximately four beers, while Mr. Stidom had four to five beers and Ms. Lindsey drank four to six beers. During the course of the evening, Ms. Lindsey purchased no alcohol herself.

Sometime between midnight and 12:30 a.m., Ms. Lindsey, along with Ms. Raines, Mr. Stidom, Joney E. Russell and Craig Mounts, left the Tavern–Off–The–Green and proceeded to The Derby Club, a bar located on Eighth Avenue and Fifth Street West in Huntington. The group travelled to The Derby Club in two vehicles; one vehicle driven by Ms. Lindsey with Mr. Russell and Mr. Mounts as passengers and

the other vehicle driven by Ms. Raines' friend, Michelle Canella, in which Ms. Raines and Mr. Stidom were passengers. Until approximately 4:30 a.m., Ms. Raines, Mr. Stidom, Mr. Mounts, and Ms. Lindsey continued drinking alcoholic beverages at The Derby Club. Around 4:30 a.m., the young people left The Derby Club and walked next door to another bar, The Late Spot. Mr. Stidom, Mr. Mounts, and Ms. Lindsey continued to drink alcoholic beverages at The Late Spot, although there was a dispute at trial concerning the amount of alcohol consumed by each of them.

Supposedly, Ms. Raines began drinking coffee at The Late Spot, and stopped drinking alcohol at approximately 4:00 a.m., but, nonetheless, evidence was presented at the trial to show that five hours after Ms. Raines had allegedly stopped drinking alcohol, Ms. Raines' blood alcohol level was .18% and her blood alcohol level would have been .21% at 7:30 a.m. Sunday morning, the time the group left The Late Spot. After the accident, Ms. Lindsey's blood alcohol level was .16%. Both Ms. Lindsey and Ms. Raines testified that Mr. Stidom was intoxicated. Ms. Russell slept the majority of the time the group was at The Derby Club and did not consume any alcohol.

At approximately 7:30 a.m. on Sunday, after being together at three bars all night and consuming alcohol together since at least 10:00 p.m. Saturday, Ms. Raines, Ms. Russell, Mr. Stidom, Mr. Mounts and Ms. Lindsey left The Late Spot and got into Ms. Lindsey's car, their intention being to go to breakfast together. Ms. Lindsey drove, and before proceeding to breakfast, the group went to find an open gasoline station so that Ms. Lindsey could put fuel in her vehicle. Mr. Mounts was let out of the car because he did not have money to buy breakfast.

The evidence presented at trial showed that Ms. Lindsey drove in an erratic manner, speeding up and "jumping" railroad tracks, almost losing control of her car. Also, Ms. Lindsey drove fast and ran at least one red light. There is no question that Ms. Lindsey's passengers protested Ms. Lindsey's manner of driving and demanded that she slow down.

After Mr. Mounts got out of Ms. Lindsey's car and the group went to look for a gasoline station, a single car accident occurred. Ms. Raines, Ms. Russell and Mr. Stidom received severe injuries and subsequently sued Ms. Lindsey and her mother, Karen Sue Lindsey, for negligence. The jury returned a verdict in favor of Ms. Raines for $9,752.32 for medical expenses, $250,000 in compensatory damages and $500,000 in punitive damages. Ms. Russell was awarded $4,151.64 for medical expenses and $75,000 in compensatory damages, while Mr. Stidom received $19,500 for medical expenses, $150,000 in compensatory damages and $300,000 in punitive damages.

The Court instructed the jury that, as a matter of law, Ms. Raines, Ms. Russell and Mr. Stidom were not negligent in accepting a ride from Gina Kay Lindsey upon leaving The Late Spot. Plaintiff's Jury Instruction No. 1, (Record at 354–355) which was given by the court, stated:

"The Court instructs the jury that under the laws of the State of West Virginia, a driver of an automobile owes a duty to an invited guest to take reasonable care for his safety. It is only when the guest knows or by due diligence should know, that the driver is not taking proper precautions, that it becomes the passengers [sic] duty to complain or object to the conduct of the driver.

"In this particular case *there is no evidence to prove that prior to entering the vehicle, the actions of Gina Lindsey were sufficient to have caused any of the plaintiffs to know that her ability to operate the vehicle had been impaired. Accordingly, as a matter of law, it was not negligent for any of them to have accepted a ride.* Accordingly, the Court instructs you that before you may conclude that the plaintiffs were guilty of negligence which contributed to their injuries, you must find from a preponderance of the evidence that after the ride began, Gina Lindsey was operating the automobile in a manner which the plaintiffs knew or should have known was a failure to take proper precautions but, notwithstanding this fact,

**140**

they failed to complain about her conduct. If, on the other hand, you conclude that the guest passengers did complain to Gina Lindsey about her driving before the accident, then, as a manner [sic] of law, they have discharged their duty and cannot be guilty of any negligence which caused or contributed to their injuries." [Emphasis added]

 The evidence at trial was overwhelming that the plaintiffs and the defendant, Gina Kay Lindsey, were altogether in various bars drinking liquor for a long time. It was the defendants' right to argue that the plaintiffs in this case had reasonable grounds to believe that Ms. Lindsey was drunk and that they behaved in a negligent manner by entering the car with her. By giving a binding instruction telling the jury that, as a matter of law, the plaintiffs were *free* from contributory negligence for any act done up to the point of entering the car, the court effectively precluded the defendants from arguing their theory of the case, even though that theory was supported by ample evidence. As this Court said in syllabus point 2 of *Reager v. Anderson*, 179 W.Va. 691, 371 S.E.2d 619 (1988):

"In a comparative negligence or causation action the issue of apportionment of negligence or causation is one for the jury or other trier of the facts, and only in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference from them should such issue be determined as a matter of law. The fact finder's apportionment of negligence or causation may be set aside only if it is grossly disproportionate."

*See also Biddle v. Haddix*, 154 W.Va. 748, 179 S.E.2d 215 (1971); *Wilson v. Edwards*, 138 W.Va. 613, 77 S.E.2d 164 (1953); *Miller v. Blue Ridge Transp. Co.*, 123 W.Va. 428, 15 S.E.2d 400 (1941).

Accordingly, the judgment of the Circuit Court of Cabell County is reversed and the case is remanded for a new trial.

Reversed and remanded.